BC

FILED
5/29/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AXM

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRANDON M. LIPIN, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cv-00644 |
| | ) | Judge John J. Tharp, Jr. |
| MAXIMUS EDUCATION, LLC d/b/a | ) | |
| AIDVANTAGE, and MAXIMUS FEDERAL | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| *Defendants.* | ) | |

**SECOND AMENDED VERIFIED COMPLAINT AT LAW AND IN EQUITY**

(Illinois Consumer Fraud and Deceptive Business Practices Act; Negligent Performance of Undertaken Servicing Functions; Negligent Misrepresentation; Negligent Handling of Personal Information; Unjust Enrichment)

Plaintiff Brandon M. Lipin, proceeding *pro se*, states as follows:

## I. PRELIMINARY STATEMENT

1. This action challenges the conduct of Plaintiff's federal student loan servicer, operating under the trade name "Aidvantage." **Plaintiff does not seek to avoid repayment of his student loans or to discharge any balance.** Since January 2026, Plaintiff has voluntarily paid $12,830.10 toward his federal student loans while no payment was required. The primary relief Plaintiff seeks is straightforward: **to be serviced accurately and to receive a valid, verifiable accounting that explains the current balance on his loans.** Plaintiff also seeks correction of documented errors that have inflated his balance, confused his account status, and exposed his personal information. These claims arise from the servicer's own independent conduct—its own affirmative misrepresentations, its own entity misidentification, its own data handling failures—not from any federal policy, directive, or regulation that Defendants were required to follow.

2. This Second Amended Complaint is filed to reflect the current party structure following this Court's denial of remand (Dkt. 24) and the intervention of Maximus Education, LLC as a named defendant, and to provide additional factual detail responsive to issues identified during briefing on the pending Motion to Dismiss.

## II. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Complete diversity exists: Plaintiff is a citizen of Illinois; Defendant Maximus Education, LLC is a Virginia limited liability company whose sole member, Maximus Federal Services, Inc., is a Virginia corporation with its principal place of business in Virginia; Defendant Maximus Federal Services, Inc. is a Virginia corporation. The amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this District, Plaintiff resides in this District, and Defendants transact substantial business here.

## III. PARTIES

5. Plaintiff Brandon M. Lipin resides at 432 Dogwood Terrace, Buffalo Grove, Illinois 60089. Plaintiff executed multiple William D. Ford Federal Direct Master Promissory Notes ("MPNs") to finance his doctoral education. Plaintiff earned his doctorate in August 2023.

6. Defendant **Maximus Education, LLC d/b/a Aidvantage** ("Aidvantage" or "the Servicer") is a Virginia limited liability company that services Plaintiff's federal student loans under contract with the U.S. Department of Education ("ED"). Aidvantage is licensed as a student loan servicer in Illinois under License No. SLS 0000045, NMLS ID 2241381. Aidvantage manages Plaintiff's account, communicates with Plaintiff regarding repayment status, applies payments, calculates interest, and reports account information to credit reporting agencies and federal systems.

7. Defendant **Maximus Federal Services, Inc.** ("MFSI") is a Virginia corporation and the sole member of Maximus Education, LLC, as confirmed by the LLC Agreement produced by the Massachusetts Division of Banks. MFSI is alleged to be connected to the Aidvantage servicing structure through its status as sole member of Maximus Education, overlapping management, borrower-facing and regulatory references, federal complaint routing, and the shared litigation position taken by both entities. Both entities have appeared and are represented by the same counsel in this action.

8. Throughout this Complaint, references to "Aidvantage" refer primarily to Maximus Education, LLC d/b/a Aidvantage, and to MFSI only to the extent the evidence shows that MFSI participated in, controlled, benefitted from, or was identified in connection with the

challenged conduct. Plaintiff's claims arise from the conduct of the entity or entities operating under the Aidvantage name that serviced Plaintiff's loans and communicated with Plaintiff in that capacity.

## IV. THE ENTITY IDENTITY CONFUSION

9. Defendants' own borrower-facing correspondence repeatedly identified Plaintiff's loan servicer as **"Aidvantage Solutions, LLC (NMLS# 212430)"** in the "Your loan servicer" section of letters sent to Plaintiff. This identification appeared on at least fifteen separate borrower-facing documents, including production pages 414, 425, 429, 433, 437, 441, 445, 449, 453, 457, 463, 467, 476, 480, and 535 of the April 3, 2026 document production.

10. "Aidvantage Solutions, LLC" does not exist as a licensed entity. NMLS #212430 is the legacy identifier previously assigned to Navient Solutions, LLC, not to any Maximus entity. The operative licensed entity for Plaintiff's loans is Maximus Education, LLC d/b/a Aidvantage, NMLS #2241381.

11. Plaintiff's Consumer Financial Protection Bureau ("CFPB") complaints were routed to three different entity names: "Maximus Education," "Maximus Federal Services, Inc.," and "Maximus Education LLC." The federal government's own consumer complaint system could not consistently identify the responsible entity.

12. The entity confusion alleged here is not hypothetical. It required two federal removal proceedings, a state court intervention, and an Executive Committee reassignment order (Dkt. 2) to establish the current party structure. The confusion was caused by Defendants' overlapping use of the Aidvantage name across legally distinct entities, not by any failure of diligence on Plaintiff's part.

13. This pattern of entity misidentification in borrower-facing communications is material because it prevents the borrower from identifying the correct licensed entity, directing disputes to the proper regulatory authority, and exercising rights under state licensing and

consumer protection frameworks.

14. Defendants have argued that Plaintiff's claims should be dismissed because Plaintiff initially directed claims at MFSI rather than Maximus Education. This Second Amended Complaint resolves that issue. Both Maximus Education, LLC and Maximus Federal Services, Inc. are named defendants, and Plaintiff's claims are directed at the entity or entities operating under the Aidvantage name. The entity confusion that required correction was caused by Defendants' own overlapping use of the Aidvantage brand across legally distinct entities, their identification of a nonexistent entity in borrower correspondence, and the federal complaint system's inability to consistently identify the responsible entity.

## V. DEFENDANTS' PRIVATE SERVICING CONDUCT IS NOT SHIELDED FROM STATE-LAW CLAIMS BASED ON AFFIRMATIVE MISREPRESENTATIONS

15. Defendants have suggested that because they service federal student loans under contract with ED, they share the federal government's sovereign immunity. This argument fails for multiple independent reasons.

16. First, Defendants have affirmatively and repeatedly asserted their status as private corporations, not government agents, throughout this litigation. Maximus Education, LLC removed this case to federal court under 28 U.S.C. § 1332(a)(1), asserting diversity jurisdiction based on its status as a Virginia limited liability company. An entity cannot invoke the benefits of private corporate status for jurisdictional purposes while simultaneously claiming governmental immunity from suit.

17. Second, Plaintiff's claims do not arise from any ED directive, regulation, or policy that Defendants were required to follow. Plaintiff's claims arise from Defendants' own independent servicer conduct: their own affirmative misrepresentations in the F166 letter, their own decision to identify a nonexistent entity in borrower correspondence, their own failure to apply a payment for fifteen business days, their own twelve-month document retention

practice, and their own handling of Plaintiff's personal information in insecure mail. No federal directive required any of this conduct.

18. Third, the Seventh Circuit has recognized that state-law claims based on a servicer's own affirmative misrepresentations are not preempted by federal law. *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 648–49 (7th Cir. 2019). Plaintiff's claims are directed at Defendants' own borrower-facing conduct, not at any federal directive requiring that conduct. *See Altria Grp., Inc. v. Good*, 555 U.S. 70, 79–82 (2008).

19. Fourth, Defendants are licensed by the State of Illinois as a student loan servicer (License No. SLS 0000045) and are subject to state regulatory oversight through the Illinois Department of Financial and Professional Regulation and the Illinois Student Loan Servicing Rights Act, 110 ILCS 992/1 *et seq.* A private corporation that holds a state license, is subject to state regulatory enforcement, and removes cases based on diversity jurisdiction is not an arm of the federal government entitled to sovereign immunity.

## VI. FACTUAL ALLEGATIONS

### A. The Loan Portfolio

20. Plaintiff holds approximately twenty active-balance William D. Ford Federal Direct Loans originated between 2012 and 2022, with interest rates ranging from 3.40% to 8.05%. As of May 2026, Plaintiff's reported total balance is approximately $437,183.88, consisting of approximately $387,095.34 in principal and approximately $50,088.54 in unpaid interest.

21. Aidvantage assumed servicing of Plaintiff's loans in 2021. The MPNs incorporate applicable federal statutes and regulations governing loan servicing, including requirements for accurate recordkeeping, proper interest calculation, timely and accurate borrower communications, and proper payment application. *See* 34 C.F.R. §§ 685.211, 685.209.

**B. Deceptive Portal Representations and Interest Accrual**

22. On July 1, 2025, Aidvantage's online borrower portal simultaneously displayed: (a) "No Payment Due"; (b) "$33,720.02" in unpaid interest; and (c) a total balance of $429,494.04. The portal did not provide any amortization schedule, interest calculation methodology, or explanation for how $33,720.02 in interest had accrued or would be treated.

23. This presentation was materially misleading. A reasonable borrower observing that no payment was due while simultaneously seeing a substantial and growing interest balance—with no explanation, amortization schedule, or tools to address it—would be unable to make informed decisions about voluntary payments, repayment plan selection, or interest management. This is particularly true where, as here, the borrower was in SAVE administrative forbearance with no ability to enroll in a qualifying repayment plan and was simultaneously making substantial voluntary payments.

24. The misleading character of this presentation is compounded by Aidvantage's failure to provide: (a) any amortization schedule; (b) any formula or methodology for interest computation; (c) any notice required prior to capitalizing interest; and (d) any explanation for interest accrual during asserted forbearance periods.

**C. The F166 Letter and Broken Commitments**

25. On December 12, 2024, Aidvantage sent Plaintiff a formal letter (code F166) affirmatively representing that the interest rate on Plaintiff's loans was 0% and committing to provide advance notification before any change to this rate.

26. By August 2025, interest had resumed accruing on Plaintiff's account. Aidvantage provided no notification of this change. Plaintiff discovered the resumption of interest accrual independently through his own review of account data.

27. The F166 letter constitutes an affirmative written representation about material loan terms made by the servicer to the borrower. The subsequent failure to honor the notification commitment or the 0% rate representation, without any communication to the

borrower, is a deceptive act actionable under Illinois law. This claim is based on an affirmative representation, not an omission, and is therefore not preempted by the Higher Education Act. *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 648–49 (7th Cir. 2019); *Altria Grp., Inc. v. Good*, 555 U.S. 70, 79–82 (2008).

**D. Voluntary Payments and Application Failures**

28. On July 15, 2025, Plaintiff tendered a payment of $2,566.26 to Aidvantage. Fifteen business days later, Aidvantage's transaction history still reflected the same principal balance and the same unpaid interest amount, evidencing failure to timely apply the payment and to provide transparent accounting of its allocation.

29. Since January 13, 2026, Plaintiff has made documented voluntary payments totaling at least $12,830.10 toward his federal student loans while no payment was required due to SAVE administrative forbearance. The documented payment history consists of 73 separate transactions posted or processed between January 13 and May 26, 2026, as follows:

| Month | Transactions | Amount |
|---|---|---|
| January 2026 | 1 | $3,152.08 |
| February 2026 | 2 | $850.00 |
| March 2026 | 8 | $1,778.02 |
| April 2026 | 25 | $2,875.00 |
| May 2026 (through May 26) | 37 | $4,175.00 |
| **Total** | **73** | **$12,830.10** |

30. These payments were made voluntarily, in good faith, and under protest, and should not be construed as acceptance of Aidvantage's disputed servicing, balances, interest calculations, repayment-plan classifications, or account status. Plaintiff made these payments to reduce the interest accruing on his account and to demonstrate continued financial engagement with his loan obligations.

31. During the pendency of this action, Plaintiff submitted an income-driven repayment application through the federal student aid process, with the application routed to Aidvantage for servicing action. Plaintiff is in the process of transitioning to a functioning repayment plan, including PAYE, and has continued making voluntary payments while that transition is pending. Plaintiff's voluntary payments substantially exceed the amount Plaintiff understands would be required under PAYE. These payments reflect good-faith repayment conduct and do not constitute acceptance of Defendants' disputed balance, interest calculations, capitalization events, repayment-plan classifications, or servicing records.

32. Plaintiff's voluntary payments were processed through Aidvantage's servicing platform during a period when Plaintiff alleges the platform was inaccurately tracking interest accrual, capitalization, and balance calculations. If the underlying interest calculations were inaccurate, then the allocation of Plaintiff's $12,830.10 in payments between principal and interest was correspondingly inaccurate, resulting in direct, quantifiable economic harm to Plaintiff.

**E. Capitalization Events Without Explanation**

33. National Student Loan Data System ("NSLDS") records document capitalization events across Plaintiff's loan portfolio in which accrued interest was converted into principal, permanently increasing Plaintiff's balance. Plaintiff's forensic review of NSLDS data and Aidvantage's own April 3, 2026 document production identified approximately **932 capitalization entries** reflecting approximately **$22,767 in total capitalized interest** across the portfolio.

34. Aidvantage has not provided Plaintiff with any explanation of the regulatory authority, borrower consent, or servicing event that triggered each capitalization. Aidvantage's April 3, 2026 production included a cover letter representing that Plaintiff's interest had "capitalized only once," yet the enclosed records documented approximately 883 capitalization entries. This internal contradiction within a single production undermines Defendants'

credibility and corroborates Plaintiff's allegations of inaccurate recordkeeping.

35. Each unauthorized or unexplained capitalization event permanently increases Plaintiff's principal balance and causes interest to accrue on the capitalized amount, compounding the financial harm over the remaining life of the loans.

**F. False Delinquency Date**

36. NSLDS records reflect a delinquency date of **August 11, 2017** on Plaintiff's Direct Grad PLUS loan (P17E01776001). The same NSLDS records show that this loan was in active forbearance effective **August 3, 2017**. A loan cannot be simultaneously in forbearance and delinquent. This is a self-proving data error that is contradicted by the servicer's own federal records and requires no external evidence to establish.

37. Aidvantage's March 13, 2026 letter to the IDFPR stated that "three independent reviews found no errors" on Plaintiff's account. The false delinquency date directly contradicts that representation and calls into question the adequacy of any review process Aidvantage claims to have conducted.

**G. Status Cycling and Contradictory Communications**

38. From December 2024 through July 2025, Aidvantage cycled Plaintiff's loans through mutually exclusive statuses—including "In-School Deferment" (despite Plaintiff's August 2023 graduation), "Administrative Forbearance (COVID)," and "Administrative Forbearance (SAVE Litigation)"—at times simultaneously, without notice or consent.

39. Between April 2 and June 28, 2025, Plaintiff sent at least seven written communications to Aidvantage requesting clarification of account status, interest accrual methodology, capitalization events, and payment application. Aidvantage provided materially inconsistent and contradictory responses regarding whether interest was accruing, the timing of capitalization, plan status, and payment obligations, making informed borrower decisions impossible.

### H. Record Retention Failures

40. On February 14, 2025 (FSA Feedback Case No. 24460630), Aidvantage admitted in writing that it retains borrower correspondence for only **twelve months**. This admission means that borrower correspondence documenting Plaintiff's disputes, requests for information, and Aidvantage's own representations from more than twelve months prior has been or will be destroyed.

41. A twelve-month retention period is inadequate to permit borrower verification of servicing conduct across a multi-year, multi-loan portfolio. Plaintiff does not plead this as a standalone private cause of action under federal record-retention regulations, but as factual evidence supporting his claims that Defendants failed to maintain reliable servicing records, failed to provide verifiable account information, and impaired Plaintiff's ability to challenge disputed balances. The practice is also inconsistent with the Illinois Student Loan Servicing Rights Act's requirement that servicers maintain and produce payment histories and other servicing records, 110 ILCS 992/5-25.

### I. Privacy Violation

42. On or about March 9, 2025, Aidvantage mailed Plaintiff's full, unredacted Social Security number and federal loan schedules in an envelope that was unsealed, damaged, or otherwise insecure upon receipt at Plaintiff's Illinois residence. The condition of the mailing exposed Plaintiff's sensitive personal identifying information during transit or delivery.

43. As a direct result of this exposure, Plaintiff enrolled in privacy and identity protection services at a cost of **$29.99 per month**, which Plaintiff has maintained continuously since approximately March 2025. As of May 2026, Plaintiff has incurred approximately $449.85 in identity protection costs directly attributable to Defendants' negligent handling of his personal information, with ongoing monthly costs continuing to accrue.

**J. Systemic Regulatory Context**

44. On March 11, 2026, the U.S. Government Accountability Office published Report No. GAO-26-108534, finding that: (a) the Office of Federal Student Aid stopped reviewing the accuracy of loan servicers' borrower records in February 2025; (b) four of five federal student loan servicers did not meet the accuracy performance standard; (c) FSA's staffing was reduced by 46%; and (d) the Department of Education's independent auditor reported a continuing "material weakness related to the reliability of its student loan data" as recently as January 2026.

45. On March 27, 2026, the Department of Education directed all 7.5 million borrowers enrolled in the SAVE Plan—including Plaintiff—to exit the plan within 90 days of servicer notification. During the SAVE administrative forbearance period, interest resumed accruing without notification (August 2025), time in forbearance did not count toward Public Service Loan Forgiveness or income-driven repayment forgiveness, and federal accuracy oversight of the servicers managing these accounts was simultaneously dismantled.

46. These government findings corroborate the plausibility and systemic nature of Plaintiff's allegations regarding interest calculation errors, capitalization irregularities, and record-keeping failures.

**K. Contradictions in Regulatory Submissions**

47. On March 13, 2026, Aidvantage submitted a letter to the Illinois Department of Financial and Professional Regulation (SES Case #9253) containing five testable factual claims, each of which is contradicted by existing records:

(a) Aidvantage claimed "comprehensive loan records" were provided on February 11, 2026, yet approximately 508 of the 793 pages in the April 3, 2026 production were image-only and not machine-readable, and Aidvantage previously admitted a 12-month document retention limit;

(b) Aidvantage claimed "three independent reviews found no errors," yet NSLDS records contain a false delinquency date of August 11, 2017 falling within a documented forbearance period beginning August 3, 2017;

(c) Aidvantage stated interest was accruing "which the Department requires for borrowers in SAVE forbearance," yet Aidvantage's own F166 letter (December 12, 2024) represented a 0% interest rate with a commitment to notify before any change;

(d) Aidvantage claimed "no ability to unilaterally suspend interest without permission" from ED, yet Aidvantage's CFPB response to Complaint No. 260208-28647974 indicated Plaintiff's account was "paid in full" (subsequently retracted by defense counsel as sent "in error"), at minimum demonstrating that account-status information could be generated, modified, transmitted, or corrected within the servicing and complaint-response process; and

(e) Aidvantage stated it "has not reported negative information" about Plaintiff's loans, yet the false August 11, 2017 delinquency date exists in NSLDS records maintained by or on behalf of the servicer.

## VII. COUNTS

### COUNT I — VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/2)

48. Plaintiff realleges and incorporates all preceding paragraphs.

49. Defendants engaged in unfair and deceptive acts and practices in the conduct of trade and commerce by: (a) identifying the loan servicer as "Aidvantage Solutions, LLC (NMLS# 212430)"—a nonexistent entity using a legacy Navient identifier—in at least fifteen borrower-facing communications, preventing Plaintiff from identifying the correct licensed entity and exercising regulatory and dispute rights; (b) representing on December 12, 2024 that

Plaintiff's interest rate was 0% and committing to advance notification before any change, then allowing interest to resume accruing in August 2025 without providing any notification; (c) displaying contradictory account information on the borrower portal while Plaintiff was making substantial voluntary payments and had no access to amortization schedules or interest calculation methodologies; (d) representing to state regulators that "three independent reviews found no errors" while NSLDS records contain a self-proving false delinquency date; and (e) processing $12,830.10 in Plaintiff's voluntary payments through a servicing system that inaccurately tracked interest accrual and capitalization.

50. Defendants intended that Plaintiff and similarly situated borrowers rely on these representations in managing their accounts and making payment decisions.

51. The deceptive acts occurred in the course of trade and commerce, specifically the servicing of federal student loans in Illinois.

52. Plaintiff suffered actual economic damages including: (a) overpayment of interest attributable to approximately $22,767 in unexplained capitalization across the loan portfolio; (b) misallocation of $12,830.10 in voluntary payments applied against an inaccurately calculated balance; (c) costs incurred to monitor, verify, and dispute servicing errors across multiple regulatory channels; and (d) credit and identity monitoring costs following the March 9, 2025 privacy incident.

53. Plaintiff's claims are based on Defendants' affirmative misrepresentations and deceptive conduct, not on omissions or failures to make disclosures required exclusively by federal law. *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 648–49 (7th Cir. 2019); *Altria Grp., Inc. v. Good*, 555 U.S. 70, 79–82 (2008).

## COUNT II — NEGLIGENT PERFORMANCE OF UNDERTAKEN SERVICING FUNCTIONS

54. Plaintiff realleges and incorporates all preceding paragraphs.

55. Defendants undertook to service Plaintiff's federal student loans under the Aidvantage name, including by maintaining Plaintiff's borrower-facing account portal, applying payments, communicating account status, calculating and displaying interest, responding to borrower disputes, processing repayment-plan information, and maintaining servicing records.

56. Plaintiff does not bring this count to enforce the Higher Education Act, federal servicing regulations, or the Department of Education's servicing contract as a private cause of action. Rather, Plaintiff brings this count under Illinois common law based on Defendants' voluntary undertaking of borrower-facing servicing functions and their duty to exercise reasonable care in performing those undertaken functions.

57. Defendants breached that duty by negligently performing the servicing functions they undertook, including by: (a) failing to provide a reliable account reconciliation; (b) displaying contradictory borrower-facing account information; (c) failing to explain or verify disputed interest accrual and capitalization entries; (d) failing to timely and transparently reflect payment application; (e) identifying a nonexistent or incorrect servicing entity in borrower-facing documents; and (f) maintaining servicing records in a manner that prevents independent verification of Plaintiff's account history.

58. Plaintiff reasonably relied on Defendants' undertaken servicing functions because Defendants were the only borrower-facing entity through which Plaintiff could access account information, make payments, obtain repayment-plan information, dispute account data, and attempt to verify his balance.

59. Plaintiff suffered concrete economic harm as a result, including misallocation or unverifiable allocation of voluntary payments, payment of interest on disputed or inaccurately calculated balances, identity-protection and verification costs, and ongoing exposure to additional interest accrual or capitalization based on account data Plaintiff contends is inaccurate.

60. This count is based on Defendants' own servicing conduct and voluntary undertaking of borrower-facing functions. It is not based on any claim that Plaintiff may directly enforce federal servicing regulations, the Higher Education Act, or a contract between Defendants and the Department of Education.

**COUNT III — NEGLIGENT MISREPRESENTATION**

61. Plaintiff realleges and incorporates all preceding paragraphs.

62. Aidvantage, in its capacity as Plaintiff's loan servicer, made affirmative representations to Plaintiff regarding the status, interest rate, capitalization, entity identity, and payment application on his account through borrower-facing communications including the online portal, the F166 letter, payment systems, and responses to Plaintiff's written inquiries.

63. The representations were false or misleading in material respects, including the entity identification as "Aidvantage Solutions, LLC (NMLS# 212430)," the 0% interest commitment in the F166 letter, the contradictory portal displays, and the failure to reflect payment application.

64. Aidvantage was negligent or careless in ascertaining the truth of these representations, consistent with the GAO's finding that four of five servicers failed accuracy standards and the DOE auditor's finding of a material weakness in student loan data reliability.

65. Plaintiff relied on these representations in making voluntary payments totaling at least $15,546.36 (a cumulative figure reflecting the $12,830.10 in voluntary payments made between January 13 and May 26, 2026, as described in Paragraph 29, together with additional voluntary payments made during 2025, including but not limited to the July 15, 2025 payment described in Paragraph 28), in managing his account, and in making decisions about his financial planning. Plaintiff suffered economic harm as a result, including payment of interest on inaccurately capitalized principal and misallocation of voluntary payments.

66. When a loan servicer voluntarily communicates with a borrower about account status, interest accrual, and payment obligations, it assumes a duty to exercise reasonable care not to provide misleading information. The Seventh Circuit has recognized the viability of negligent misrepresentation claims against student loan servicers based on affirmative communications. *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 648–49 (7th Cir. 2019).

**COUNT IV — NEGLIGENT HANDLING OF PERSONAL INFORMATION**

67. Plaintiff realleges and incorporates all preceding paragraphs.

68. On or about March 9, 2025, Aidvantage mailed Plaintiff's full Social Security number and detailed federal loan schedules in an envelope that was unsealed, damaged, or otherwise insecure upon receipt at Plaintiff's Illinois residence.

69. This claim is brought under common law negligence, not under any specific state privacy statute. Aidvantage owed Plaintiff a duty of reasonable care in handling and transmitting his sensitive personal information. Student loan servicers routinely handle borrowers' Social Security numbers, financial data, and account details, and have a recognized obligation to protect this information from unauthorized exposure. This duty arises from the servicer-borrower relationship and the foreseeable risk of harm from exposure of sensitive financial and identifying information.

70. Aidvantage breached this duty by transmitting Plaintiff's unredacted Social Security number and loan data in an insecure condition.

71. Plaintiff suffered concrete, quantifiable injury: the cost of privacy and identity protection services at $29.99 per month since approximately March 2025, totaling approximately $449.85 through May 2026 and continuing to accrue, plus the foreseeable risk of identity theft and the time and effort expended to monitor his credit and personal information. These are the type of mitigation injuries the Seventh Circuit has recognized as

concrete in analogous data-exposure cases. *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693–94 (7th Cir. 2015); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967–68 (7th Cir. 2016).

**COUNT V — UNJUST ENRICHMENT (In the Alternative)**

72. Plaintiff realleges and incorporates all preceding paragraphs.

73. This count is pled in the alternative to Count II pursuant to Federal Rule of Civil Procedure 8(d)(2)–(3). *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 886 (7th Cir. 2022).

74. Plaintiff made voluntary payments totaling at least $15,546.36 (a cumulative figure reflecting the $12,830.10 in voluntary payments made between January 13 and May 26, 2026, as described in Paragraph 29, together with additional voluntary payments made during 2025, including but not limited to the July 15, 2025 payment described in Paragraph 28) that were processed through Aidvantage's servicing platform during a period when Plaintiff alleges the platform was inaccurately tracking interest accrual and capitalization. Aidvantage received and processed these payments, retained servicing credit for the transactions, and allocated them against a balance Plaintiff contends was inflated by unauthorized capitalization events.

75. Aidvantage's retention of the benefit of processing Plaintiff's payments through an inaccurate servicing system, and the corresponding allocation of those payments against an inflated balance, violates fundamental principles of justice, equity, and good conscience. Plaintiff was directly and personally harmed: his payments were absorbed into a servicing framework he alleges is inaccurate, resulting in overpayment of interest and underpayment of principal relative to a correctly calculated balance.

**VIII. REQUESTED DECLARATORY AND EQUITABLE RELIEF**

76. Plaintiff realleges and incorporates all preceding paragraphs.

77. An actual, ongoing controversy exists between the parties concerning: (a) the accuracy of Plaintiff's current balance, including whether approximately 932 documented capitalization entries were authorized and correctly calculated; (b) the accuracy of interest accrual calculations and whether the F166 letter commitment to 0% interest and advance notification was binding; (c) the identity of the proper servicing entity and the regulatory implications of the "Aidvantage Solutions, LLC" misidentification; and (d) Defendants' obligations regarding record retention and borrower access to historical servicing records.

78. This controversy is not limited to past conduct. The SAVE plan termination and Plaintiff's transition toward a new repayment plan require account decisions based on data Plaintiff contends is inaccurate. The accuracy of Plaintiff's current balance directly affects repayment-plan treatment, payment allocation, interest accrual, and the risk of further capitalization.

79. Plaintiff seeks declaratory relief that: (a) Defendants must provide a complete and verifiable accounting of Plaintiff's loan portfolio; (b) Defendants must identify the regulatory, contractual, or servicing basis for each disputed capitalization event; (c) Plaintiff is entitled to correction of any unauthorized or inaccurately calculated interest, capitalization, delinquency, or status entry; and (d) Defendants may not rely on internally contradictory or unverifiable account data to impose additional adverse servicing consequences.

80. Plaintiff also seeks equitable relief because he faces ongoing harm absent court intervention. Interest continues to accrue on a balance Plaintiff contends is inflated by unauthorized or unexplained capitalization, and disputed account data may affect repayment-plan placement, payment application, credit reporting, and future capitalization.

81. Plaintiff seeks preliminary and permanent injunctive relief requiring Defendants to preserve complete servicing records, provide transaction-level servicing data in machine-readable form, refrain from further capitalization based on disputed account data until the balance is verified, and refrain from reporting or relying on disputed account information

in a manner that causes additional harm while the dispute remains unresolved.

82. Plaintiff pleads declaratory and injunctive relief as remedies tied to the substantive causes of action above, not as free-standing causes of action independent of those claims.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

A. On Count I: Actual damages, punitive damages where authorized, costs, and such other relief available under 815 ILCS 505/10a as the Court deems proper;

B. On Count II: Compensatory damages for negligent performance of undertaken servicing functions, including overpaid interest, misallocated payments, and verification costs;

C. On Count III: Compensatory damages resulting from Defendants' negligent misrepresentations;

D. On Count IV: Compensatory damages for privacy and identity protection costs, including $29.99 per month since March 2025 and continuing;

E. On Count V: Disgorgement and restitution of benefits unjustly retained;

F. Declaratory relief determining the parties' rights and obligations concerning the disputed balance, interest accrual, capitalization entries, servicing records, entity identification, and payment application;

G. Preliminary and permanent injunctive relief requiring preservation and production of complete servicing records, prohibiting further capitalization based on disputed data pending verification, and preventing reliance on disputed account information in a manner that causes further harm;

H. An order directing Defendants to provide a full account reconciliation of Plaintiff's loan portfolio, including transaction-level ledgers, interest calculation methodologies,

capitalization event triggers, and reconciliation with NSLDS and FSA data;

I. Pre-judgment and post-judgment interest as permitted by law;

J. Costs of suit; and

K. Such other and further relief as this Court deems just and equitable.

## VERIFICATION

I, Brandon M. Lipin, verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual allegations in this Second Amended Verified Complaint are true and correct to the best of my knowledge, information, and belief.

Dated: May 29, 2026

/s/ Brandon M. Lipin
**Brandon M. Lipin, Pro Se**
432 Dogwood Terrace
Buffalo Grove, Illinois 60089
(847) 337-2211
brandon.lipin@outlook.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record:

Scott J. Helfand
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
scott.helfand@huschblackwell.com

Michael J. Hopkins
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
michael.hopkins@huschblackwell.com

Colleen K. Fox
Husch Blackwell LLP
1801 Pennsylvania Avenue, NW, Suite 1000
Washington, DC 20006
Colleen.Fox@huschblackwell.com

/s/ Brandon M. Lipin
Brandon M. Lipin, Pro Se