**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRANDON M. LIPIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:26-cv-00644 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| MAXIMUS EDUCATION, LLC d/b/a AIDVANTAGE, and MAXIMUS FEDERAL SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED VERIFIED COMPLAINT**

Scott J. Helfand (#6283064)
Michael J. Hopkins (#6336058)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
Phone: (312) 655--1500
Facsimile: (312) 655-1501
Email: scott.helfand@huschblackwell.com
michael.hopkins@huschblackwell.com

Colleen Fox (*pro hac vice* admission)
HUSCH BLACKWELL LLP
1801 Pennsylvania Avenue, NW, Suite 1000
Washington, DC 20006
Phone: (202) 378-5795
Facsimile: (202) 378-2319
Email: Colleen.Fox@huschblackwell.com

***Counsel for Defendants***

Plaintiff Brandon Lipin took out nearly $400,000 in federal student loans and now, for the third time, asks this Court to entertain a sprawling set of state-law theories challenging the way those loans are serviced. Plaintiff's Second Amended Verified Complaint (the "SAC") is his third pleading and his second attempt to cure the deficiencies Defendants identified more than four months ago. It does not cure them.

To be sure, the SAC is longer, and it drops several of the claims Defendants showed were meritless (*e.g.,* the federal record-retention counts, the Illinois statutory privacy counts, and the stand-alone accounting and veil-piercing counts). But adding pages and renaming claims does not cure the underlying defects. What remains is the same servicing dispute, repackaged into five theories—consumer fraud, "negligent performance of undertaken servicing functions," negligent misrepresentation, negligent handling of personal information, and unjust enrichment—each of which fails as a matter of law.

The SAC fails for at least four independent reasons.

*First*, the SAC remains directed in part at MFSI, which does not service Plaintiff's loans. The SAC alleges no conduct by MFSI. Instead, the SAC simply revives—through conclusory "sole member" and "overlapping management" allegations—the very veil-piercing theory that Plaintiff has elsewhere abandoned.

*Second*, Plaintiff's claims arise from the servicing of federal student loans under a contract with the Department of Education and are thus barred by derivative sovereign immunity and preempted by the Higher Education Act. The SAC's attempt to plead around these doctrines conflates diversity jurisdiction with merits immunity and misreads the authority on which it relies.

*Third,* immunity and preemption aside, each count fails on its own elements. For example, Plaintiff identifies no actionable deceptive act or misrepresentation. What's more, Plaintiff's

servicing-based negligence claims fail because a loan servicer owes its borrower no duty independent of the loan contract. Thus, these claims fail under the economic loss doctrine.

*Fourth*, Plaintiff alleges no cognizable damages—his injury theory rests on the conditional premise that "if" the servicing calculations "were inaccurate," "then" his voluntary payments were misallocated. That is speculation, not proper pleading.

Plaintiff has had three opportunities to plead a viable claim. At this juncture, the SAC should be dismissed with prejudice.[1]

## BACKGROUND

Plaintiff executed multiple William D. Ford Federal Direct Master Promissory Notes ("MPNs") to finance his education, including a doctorate, and now holds approximately twenty Direct Loans with a reported balance of roughly $437,000. (SAC ¶¶ 5, 20.) The MPNs are agreements between Plaintiff and the Department of Education ("ED"); Maximus Education, LLC, doing business as Aidvantage, services these loans under contract with ED. (SAC ¶¶ 6, 21.)

Most of the SAC's factual allegations concern the period during which Plaintiff's loans were in "SAVE administrative forbearance." (SAC ¶¶ 23, 29, 45.) The Saving on a Valuable Education ("SAVE") plan was an income-driven repayment plan under which the Department of Education waived any interest accruing in a month that was not covered by the borrower's payment, preventing negative amortization. By Plaintiff's own account, he was placed in that federally created status, interest was set at 0%, and interest later "resumed accruing" in August 2025 when, at the Department's direction, the SAVE forbearance period ended and normal accrual

[1] As this Court has recognized, the Seventh Circuit has "repeatedly affirmed dismissals with prejudice and denials of leave to amend" where a plaintiff has had multiple opportunities to plead viable claims. *Huon v. Breaking Media, LLC*, No. 11 C 03054, 2015 WL 14072621, at *3 (N.D. Ill. May 20, 2015) (Tharp, J.).

restarted. (SAC ¶¶ 25–26, 45.) Before interest started accruing again, Plaintiff alleges that, on December 12, 2024, Aidvantage sent him a letter (code F166) stating that his interest rate was 0% and committing to provide advance notice before any change. (SAC ¶¶ 25–27.) Although Plaintiff alleges that he failed to receive that notice, Plaintiff also alleges that ED has now directed all 7.5 million SAVE borrowers, including Plaintiff, to exit the SAVE plan.[2] (SAC ¶ 45.)

The remainder of the SAC catalogs asserted servicing irregularities: that the borrower portal showed "No Payment Due" while also showing accrued interest (SAC ¶ 22); that a $2,566.26 payment was not reflected within fifteen business days (SAC ¶ 28); that the portfolio reflects "approximately 932 capitalization entries" totaling about $22,767 in capitalized interest that Aidvantage has not "explained" (SAC ¶¶ 33–35); that NSLDS reflects a 2017 delinquency date on a loan said to be in forbearance (SAC ¶¶ 36–37); that account statuses "cycled" (SAC ¶ 38); that borrower correspondence is retained for twelve months (SAC ¶¶ 40–41); and that a March 2025 mailing containing Plaintiff's Social Security number arrived in an envelope that was "unsealed, damaged, or otherwise insecure." (SAC ¶¶ 42–43.) Plaintiff also alleges that certain of Aidvantage's statements to a state regulator and federal regulator were inaccurate (SAC ¶¶ 37, 47), and points to a March 2026 Government Accountability Office ("GAO") report finding that four of five federal servicers did not meet an unrelated accuracy standard. (SAC ¶ 44.)

Notably, Plaintiff does not allege that any payment was due during the relevant period. Instead, he alleges that he made $12,830.10 in "voluntary" payments, but insists he did so "under

[2] SAVE was also partially enjoined by the District of Missouri in June 2024. *Missouri v. Biden*, 738 F. Supp. 3d 1113, 1124 (E.D. Mo. 2024), *aff'd and remanded sub nom. Missouri v. Trump*, 128 F.4th 979 (8th Cir. 2025). The Eighth Circuit then issued a nationwide injunction staying the rule entirely. *Missouri v. Trump*, 128 F.4th at 998.

protest" and such payment should "not be construed as acceptance of Aidvantage's disputed servicing, balances, [or] interest calculations." (SAC ¶¶ 1, 29–30.)

## ARGUMENT

### A. Legal Standard.

To survive a Rule 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility demands facts permitting "the reasonable inference that the defendant is liable for the misconduct alleged," *id.*; legal conclusions and elements-reciting allegations receive no presumption of truth, *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022), even in pro se filings, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff's consumer-fraud and negligent-misrepresentation claims sound in fraud, they must also satisfy Rule 9(b)'s requirement to plead "the who, what, when, where, and how" of the alleged deception. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011); *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 419 (2002).

### B. The SAC Should Be Dismissed as to MFSI, Which Does Not Service Plaintiff's Loans and Is Alleged to Have Done Nothing.

Defendants have explained since the outset of this case that MFSI does not service Plaintiff's loans; Aidvantage does.[3] The SAC does not dispute this. Instead, it names MFSI as a defendant and then concedes that MFSI is implicated only "to the extent the evidence shows that

---

[3] The Court may take judicial notice of the U.S. Department of Education's Federal Student Aid records identifying "Aidvantage"—Maximus Education, LLC—as the servicer of loans owned by the Department, and of Illinois Secretary of State records identifying Aidvantage as Maximus Education, LLC's assumed name. *See Ziklag IP LLC v. Netflix, Inc.*, No. 24-cv-01789, 2025 WL 904311, at *3 n. 2 (N.D. Ill. Mar. 25, 2025) (courts may take judicial notice of information from official government websites that is not subject to reasonable dispute).

MFSI participated in, controlled, benefitted from, or was identified in connection with the challenged conduct." (SAC ¶ 8.) That is not an allegation; it is a placeholder. A complaint must allege what each defendant did, not reserve the question for discovery. "Liability is personal," and a plaintiff may not lump defendants together and leave each to guess at the basis for its inclusion. *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

The only specific facts the SAC pleads about MFSI are that it is the "sole member" of Aidvantage and that the two entities share "overlapping management," counsel, and a "litigation position." (SAC ¶¶ 7–8.) But membership alone does not make a parent liable for the acts of its LLC—that is the defining feature of the limited-liability form. To reach MFSI, Plaintiff must pierce the corporate veil, a theory he previously pleaded, that Defendants showed was deficient, and that he has now abandoned. Conclusory "sole member" and "overlapping management" allegations cannot substitute for the factual showing that doctrine requires. *See Gass v. Anna Hosp. Corp.*, 392 Ill. App. 3d 179, 185–86 (5th Dist. 2009) (veil-piercing requires a unity of interest shown through multiple factors and is undertaken "reluctantly"). Shared counsel and a common litigation position are not among those factors. Because the SAC alleges no conduct by MFSI and no basis to disregard the corporate form, all claims against MFSI should be dismissed.

### C. Plaintiff's Claims Arise from the Servicing of Federal Student Loans and Are Barred by Derivative Sovereign Immunity and Preempted by the Higher Education Act.

Regardless of who the proper Defendant is, every claim in the SAC arises from Aidvantage's servicing of Plaintiff's federal student loans under its contract with ED. Courts in this District have repeatedly held that federal loan servicers performing that function are entitled to derivative sovereign immunity, and that state-law claims seeking to impose servicing obligations beyond those the federal scheme prescribes are preempted by the Higher Education

Act, 20 U.S.C. § 1070 *et seq.* ("HEA"). *See Witz v. Great Lakes Educ. Loan Servs., Inc.*, 752 F. Supp. 3d 980, 988–92 (N.D. Ill. 2024) (dismissing with prejudice breach-of-note, negligent-misrepresentation, and related claims against a federal loan servicer). Anticipating this argument, the SAC devotes an entire section to it. (SAC ¶¶ 15–19.) None of Plaintiff's arguments has merit.

*First*, Plaintiff's argument that removal on diversity forecloses an immunity defense conflates two distinct concepts. (SAC ¶ 16.) Diversity jurisdiction turns on citizenship. Derivative sovereign immunity is a merits defense that attaches to conduct performed at the federal government's direction—and removal concedes nothing about its availability. *See Witz*, 752 F. Supp. 3d at 989; *see also Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20–21 (1940).

*Second*, invoking *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639 (7th Cir. 2019) and *Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008), Plaintiff argues that his claims rest on "affirmative misrepresentations," not federal directives. (SAC ¶¶ 17–18.) These cases do not help Plaintiff here. *Nelson* holds only that a servicer's specific affirmative misstatement is not preempted; it does not abrogate derivative sovereign immunity or exempt servicing-performance claims from the HEA. 928 F.3d at 646–49. The SAC is overwhelmingly about servicing-performance conduct—interest calculation, capitalization, payment application, and recordkeeping (*see* SAC ¶¶ 22–24, 28, 33–41)—precisely what *Nelson* and *Witz* forbid. Meanwhile, *Altria*, which addressed a different statutory scheme, is simply inapplicable here.

*Third*, Aidvantage's Illinois servicing license (SAC ¶ 19) does not defeat immunity or preemption. A state license is not a waiver of the federal defenses that attach to ED-directed servicing. For these reasons, Plaintiff's claims are barred at the threshold, and the Court need not reach the individual counts.

Of course, even if Plaintiff identified affirmative statements or could otherwise get around immunity, Plaintiff's claims would still fail. As discussed below, all those claims fail on their elements as well.

### D. Count I (Illinois Consumer Fraud Act) Fails Because Plaintiff Does Not Plead a Misrepresentation with Particularity, Proximate Causation, or Actual Damages.

To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA"), Plaintiff must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception." *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 550 (2009). The deceptive act must be pleaded "with the same particularity and specificity as that required under common law fraud," *Robinson*, 201 Ill. 2d at 419, and the plaintiff must allege both "actual damage" and that the damage occurred "as a result of" the deception. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002); *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 199 (2005). The SAC adds new detail but satisfies none of these elements.

#### 1. Plaintiff does not plead an actionable misrepresentation with particularity.

The SAC identifies five categories of supposedly deceptive conduct. (SAC ¶ 49.) None holds up.

***The portal display.*** Plaintiff alleges that his account simultaneously showed "No Payment Due" and showed accrued interest. (SAC ¶¶ 22–23, 49(c).) Yet as Defendants explained in their prior briefing—and Plaintiff has never disputed—a federal loan can accrue interest while no payment is currently due, such as during a forbearance or deferment. A truthful statement is not a deceptive act. *See Dudley v. G6 Hosp. Prop. LLC*, 2020 IL App (1st) 182570-U, ¶¶ 31-3, *as modified on denial of reh'g* (Dec. 3, 2020 (a "consumer's unprompted assumptions" do not amount

to a misrepresentation). Repleading the same two true statements with more adjectives does not make them false.

***The F166 letter.*** Plaintiff alleges that the December 12, 2024 letter represented a 0% interest rate and committed to advance notice before any change, but that interest "resumed" in August 2025 without a separate notice. (SAC ¶¶ 25–27, 49(b).) By Plaintiff's own allegations, however, his loans were in "SAVE administrative forbearance" during this period, the 0% posture was a function of that federally created status, and interest "resumed accruing" as that status changed at ED's direction. (SAC ¶¶ 23, 26, 45.)[4] A statement that was accurate when made does not become a "misrepresentation" when later a federal agency changed the interest posture. And, in any event, the alleged failure to send a particular notice of that change is an omission, not an affirmative misstatement—and omission claims about federal loan status are preempted. *See Witz*, 752 F. Supp. 3d at 990–91. Plaintiff also does not allege that he did anything in reliance on the F166 letter, or that he was injured by the absence of a notice. (SAC ¶ 26.)

***The entity designation.*** Plaintiff alleges that borrower letters identified his servicer as "Aidvantage Solutions, LLC (NMLS# 212430)," a name he says corresponds to a legacy Navient identifier. (SAC ¶¶ 9–10, 49(a).) Even accepting that the letters contained an inaccurate trade-name field, Plaintiff pleads no injury: he always knew his servicer as "Aidvantage," corresponded with it, paid it, and argued with it. Plaintiff's own conduct and allegations sink any argument that the alleged mis-naming caused him any economic loss as required under the CFA. *Oliveira*, 201 Ill. 2d at 149.

---

[4] Plaintiff's own pleading recounts that the ED directed all SAVE borrowers, including Plaintiff, to exit the plan, and that interest "resumed accruing" during the SAVE forbearance period. (SAC ¶ 45.) The resumption of interest on SAVE loans was a function of federal policy and litigation was announced publicly, and not a discretionary representation by Aidvantage.

***The statement to regulators.*** Plaintiff alleges that Aidvantage told an Illinois state regulator that "three independent reviews found no errors." (SAC ¶¶ 37, 49(d).) But a statement made to a state regulator is not a deceptive act directed at Plaintiff in trade or commerce. Nor does Plaintiff allege that he saw or relied on the allegedly incorrect statement. So the CFA does not reach it. *De Bouse*, 235 Ill. 2d at 554 (to be deceived, a plaintiff must have been "in some manner, deceived"; a statement the plaintiff never received cannot support a claim).

***The "inaccurate system."*** Finally, Plaintiff alleges that Aidvantage "process[ed]" his payments "through a servicing system that inaccurately tracked interest accrual." (SAC ¶ 49(e).) That is a conclusion about servicing performance, not a particularized misrepresentation, and the generalized GAO findings about other servicers (SAC ¶ 44) do not supply the missing particulars as to Aidvantage's treatment of Plaintiff. *See MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 793 (N.D. Ill. 2010) (dismissing CFA claim under Rule 9(b) where plaintiff failed to identify which statements were false, when they were made, or who made them).

**2. Plaintiff alleges no actual damages caused by any deception.**

Even if Plaintiff had pled an actionable misrepresentation, his CFA claim would still fail. The CFA requires actual, out-of-pocket economic loss proximately caused by the deceptive act. *Avery*, 216 Ill. 2d at 199. None of Plaintiff's alleged losses qualifies. The $22,767 in "unexplained capitalization" (SAC ¶ 52(a)) is unexplained, not unauthorized—capitalization of accrued interest is routine. The $12,830.10 in "misallocat[ed]" payments (SAC ¶ 52(b)) rests on Plaintiff's own conditional theory—"If the underlying interest calculations were inaccurate, then the allocation . . . was correspondingly inaccurate" (SAC ¶ 32)—which is supposition, not pleading. *Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 706 (N.D. Ill. 2012). Those payments were in any event "voluntary" and made "while no payment was required" and "under protest" (SAC ¶¶ 29–30). So

Plaintiff cannot show that those payments were the result of any alleged deceptive act. The remaining items (*e.g.*, monitoring costs and dispute expenses (SAC ¶ 52(c)–(d)) are self-help and litigation costs. They are insufficient under *Worix* and *MacLeod v. Commonwealth Edison Co.*, 2014 IL App (2d) 130037, ¶ 57.

Count I should be dismissed with prejudice.

### E. Plaintiff's Servicing-Based Tort Claims (Counts II and III) Fail Because the Servicer Owed No Duty Independent of Its Contract.

Counts II and III sound in tort, but every tort claim requires a duty that the defendant owes the plaintiff independent of any contract. A loan servicer owes its borrower no such duty. On the contrary, a servicer's obligations arise "by operation of contract," so the borrower's remedy for deficient servicing lies in contract, not tort. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 568 (7th Cir. 2012). For the same reason, the *Moorman* economic-loss doctrine bars these claims: it "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Id.* at 567 (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69 (1982)).

The Seventh Circuit has applied this rule to bar borrowers' tort claims against loan servicers. In *Wigod*, the servicer's duty to service the loan "emerged solely out of its contractual obligations" and absent a fiduciary relationship, it "owed [the borrower] no independent duty . . . in servicing her home loan." *Id.* And in *Catalan v. GMAC Mortgage Corp.*, borrowers were "foreclosed from recovering on their negligence claims under the economic loss doctrine" because the loan "contract itself cannot give rise to an extra-contractual duty."[5] 629 F.3d 676, 692-3 (7th Cir. 2011).

[5] These decisions are in good company. Courts applying other States' economic-loss doctrines have reached the same result, dismissing borrowers' tort claims against their loan servicers where the asserted losses are economic and the asserted duties arise from the loan documents. *See Schaefer v. Indymac Mortg. Servs.*, 731 F.3d 98, 103–04 (1st Cir. 2013) (economic-loss doctrine

In short, the economic-loss doctrine bars these claims. As discussed below, however, these claims suffer from additional, independent defects.

### F. Count II (Negligent Performance of Undertaken Servicing Functions) Also Fails Because Plaintiff Identifies No Cognizable Duty.

Count II is new in label only. Stripped of its "voluntary undertaking" framing, it asks the Court to impose tort liability on a loan servicer for allegedly performing federal servicing functions—recordkeeping, interest calculation, payment application, and account communications—imperfectly. (SAC ¶¶ 55–60.)

The problem for Plaintiff is that the voluntary-undertaking doctrine supplies no duty here. That doctrine is narrowly construed, "the duty of care to be imposed upon a defendant is limited to the extent of its undertaking." *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32 (1992). It does not create a free-floating duty to perform federal loan servicing flawlessly. Nor does Plaintiff allege the special or fiduciary relationship that Illinois law requires to support a servicing-based duty of care—a relationship this Court has held a federal loan servicer does not have with its borrowers. *Witz*, 752 F. Supp. 3d at 992. For this reason, too, this claim fails.

### G. Count III (Negligent Misrepresentation) Fails Because Plaintiff Pleads No Special Duty, No Actionable Misrepresentation, and No Reliance.

Count III is a claim for negligent misrepresentation. That claim requires "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement;

---

barred borrower's negligence and negligent-misrepresentation claims against lender and servicer); *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73–74 (D. Mass. 2020) (economic-loss doctrine barred negligence claim where plaintiffs failed to show the servicer "owed them a duty"); *Afridi v. Residential Credit Sols., Inc.*, 189 F. Supp. 3d 193, 199–201 (D. Mass. 2016) (servicing a loan "does not give rise to an independent duty of care," barring the borrower's negligence claim); *Hartman v. Wells Fargo Bank, N.A.*, 2015 WL 4974092, at *5-6 (Bankr. D.N.J. Aug. 19, 2015) (borrower's claims arising "directly from [the] commercial and contractual relationship" "do not sound in . . . tort" and are barred by the economic-loss doctrine).

(3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage . . . resulting from such reliance when the party making the statement is under a duty to communicate accurate information." *Fox Assocs., Inc. v. Robert Half Int'l, Inc.*, 334 Ill. App. 3d 90, 94 (1st Dist. 2002).

The claim fails several times over. First, as noted, Plaintiff also pleads no special or fiduciary relationship, which Illinois law requires and which this Court has held a federal loan servicer does not have with its borrowers. *Witz*, 752 F. Supp. 3d at 992; *Wigod*, 673 F.3d at 571 (courts "have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one"). Second, as noted, Plaintiff pleads no actionable misrepresentation. Third, as noted, Plaintiff pleads no reliance.

Count III should be dismissed with prejudice.

### H. Count IV (Negligent Handling of Personal Information) Fails Because Plaintiff Alleges Only Speculative, Self-Inflicted Economic Loss and No Adequately Pleaded Breach.

Count IV alleges that a single March 2025 mailing containing Plaintiff's Social Security number arrived in an envelope that was "unsealed, damaged, or otherwise insecure." (SAC ¶¶ 42, 68.) The claim fails.

As a threshold matter, no cognizable duty exists. Illinois courts have held that neither the common law, HIPAA, the FTC Act, nor the Illinois Personal Information Protection Act creates a tort-actionable duty to safeguard personal information, *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 210 F. Supp. 3d 1022, 1041 (S.D. Ill. 2016), and Plaintiff cites no authority imposing one on a loan servicer. Without a duty, Count IV fails as a matter of law.

Moreover, as noted, Plaintiff cannot establish required actual damages. He alleges no actual access, acquisition, or misuse of his information—only a "risk of exposure" and $29.99-

per-month identity-protection services he chose to purchase. (SAC ¶¶ 42–43, 71.) Costs a plaintiff incurs to guard against a speculative, unrealized risk are not a present, compensable injury and are not proximately caused by the defendant; they are self-inflicted. *Petta v. Christie Bus. Holdings Co., P.C.*, 2025 IL 130337, ¶¶ 21–22 (identity-protection costs incurred in response to a potential data exposure are "self-inflicted" harm not fairly traceable to the defendant); *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶ 15 (speculative risk of future identity theft is insufficient).

For his part, Plaintiff cites *Remijas v. Neiman Marcus Group, LLC* and *Lewert v. P.F. Chang's China Bistro, Inc*. But those cases do not help Plaintiff. Both were Article III standing decisions arising from deliberate criminal data breaches in which hackers had stolen—and in some cases already used—customer payment-card data. *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688 (7th Cir. 2015); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016). A single piece of mail alleged to have arrived "damaged" bears no resemblance to those facts.

Plaintiff's disjunctive allegation—that the envelope was "unsealed, damaged, or otherwise insecure"—is equally consistent with damage occurring in transit after the mailing left Aidvantage's control. He pleads no facts from which to infer that the condition of the envelope was attributable to Aidvantage rather than ordinary postal handling. That is not a plausible allegation of breach or causation. *Iqbal*, 556 U.S. at 678.

Count IV should be dismissed.

### I. Count V (Unjust Enrichment) Fails Because Plaintiff Conferred No Benefit on Defendants, an Express Contract Governs, and the Claim Rises and Falls With the Failed Claims.

Count V fails on the merits regardless of its alternative-pleading label. (SAC ¶ 73.) Unjust enrichment requires that the defendant "unjustly retained a benefit to the plaintiff's detriment." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989). The benefit

Plaintiff identifies—servicing fees and compensation from the ED (SAC ¶¶ 74–75)—was conferred by the ED, not Plaintiff, and a plaintiff cannot recover for a benefit conferred by a third party. *Asch v. Teller, Levit & Silvertrust, P.C.*, No. 00 C 3290, 2003 WL 22232801, at *7 (N.D. Ill. Sept. 26, 2003); *Witz,* 2025 WL 1744782, at *4-6.

In short, regardless of the alternative label, Plaintiff's unjust enrichment claim fails.[6]

**J. Plaintiff's Requests for Declaratory and Injunctive Relief Are Not Viable.**

The SAC relabels its requests for declaratory and injunctive relief as "remedies" rather than counts (SAC ¶ 82), but neither is available. The SAC asks the Court to declare whether past servicing was accurate, past capitalization was authorized, and the entity designation was correct—all backward-looking inquiries. (SAC ¶ 77.) A declaratory judgment is a prospective remedy, not a vehicle for adjudicating past conduct, *Howlett v. Scott*, 69 Ill. 2d 135, 143 (1977); *Adkins Energy, LLC v. Delta-T Corp.*, 347 Ill. App. 3d 373, 378 (2d Dist. 2004), and Plaintiff's "forward-looking" SAVE-transition reframing (SAC ¶ 78) merely restates the same accuracy dispute. The request is independently dismissible as redundant of the damages counts. *United States v. Zanfei*, 353 F. Supp. 2d 962, 965 (N.D. Ill. 2005).

Plaintiff also satisfies none of the requirements for injunctive relief. *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & W. Ry. Co.*, 195 Ill. 2d 356, 365–66 (2001) (the party seeking the injunction must demonstrate (1) a clearly ascertainable right in need of protection, (2) irreparable harm to that right without the injunction, (3) the lack of an adequate remedy at law, and (4) a substantial likelihood of success on the merits). Most glaringly, as explained throughout this

---

[6] Although Plaintiff labels this an alternative pleading, Plaintiff himself alleges that the MPNs govern his loans, which precludes this claim. *See Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25 (Unjust enrichment is also "inapplicable where an express contract . . . governs the parties' relationship.").

motion, Plaintiff's claims lack merit. In any event, he has an adequate remedy at law—the damages he already seeks—alleges no irreparable harm, and cannot show a likelihood of success given that every underlying claim fails. What he calls injunctive relief—an order to preserve records and produce "transaction-level servicing data in machine-readable form" (SAC ¶ 81)—is a discovery request, not an injunction.

Plaintiff's declaratory and injunctive relief claim should be dismissed.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss Plaintiff's Second Amended Verified Complaint in its entirety and with prejudice, and grant such further relief as the Court deems just.

Dated: July 2, 2026

**MAXIMUS FEDERAL SERVICES, INC. and MAXIMUS EDUCATION, LLC,**
Defendants

By: */s/ Michael J. Hopkins*
One of Their Attorneys

Scott J. Helfand (#6283064)
Michael J. Hopkins (#6336058)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
Phone: (312) 655--1500
Facsimile: (312) 655-1501
Email: scott.helfand@huschblackwell.com
michael.hopkins@huschblackwell.com

Colleen Fox (*pro hac vice* admission)
HUSCH BLACKWELL LLP
1801 Pennsylvania Avenue, NW, Suite 1000
Washington, DC 20006
Phone: (202) 378-5795
Facsimile: (202) 378-2319
Email: Colleen.Fox@huschblackwell.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and served via First Class Mail, postage prepaid, and email upon the following:

Brandon M. Lipin
432 Dogwood Terrace
Buffalo Grove, Illinois 60089
brandon.lipin@outlook.com

*Pro se Plaintiff*

*/s/ Michael J. Hopkins*
Michael J. Hopkins