BC

FILED
7/15/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

GMC

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRANDON M. LIPIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:26-cv-00644 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| MAXIMUS EDUCATION, LLC d/b/a AIDVANTAGE, and MAXIMUS FEDERAL SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED VERIFIED COMPLAINT**

Plaintiff Brandon M. Lipin, proceeding pro se, respectfully submits this memorandum in opposition to Defendants' Motion to Dismiss the Second Amended Verified Complaint (Dkts. 36–37).[1]

## I. PRELIMINARY STATEMENT

The motion rests on two erroneous premises. First, Defendants' January memorandum described this action as one "seeking to discharge" nearly $400,000 in student loans. (Dkt. 8 at 1.) The SAC pleads no discharge count and expressly disclaims that objective (SAC ¶ 1); Defendants now concede the case is about "the way those loans are serviced." (Dkt. 37 at 2.) The SAC seeks accurate servicing and a verifiable accounting while Plaintiff continues making payments. (SAC ¶¶ 1, 29.)

Second, Defendants assert they previously "showed" claims were "meritless" that Plaintiff failed to "cure." (Dkt. 37 at 2.) No court has adjudicated the sufficiency of any pleading in this action; Defendants' prior motion was denied as moot when the Court granted leave to file the SAC.

[1] Pinpoint citations to docket entries refer to the CM/ECF-stamped page numbers.

(Dkt. 31.) And although Defendants obtained additional time "to prepare a complete, accurate, and well-considered responsive pleading" (Dkt. 34 ¶ 3; Dkt. 35), the motion largely renews arguments directed at prior pleadings and does not address Count I's independently pleaded unfairness theory. *See infra* §§ III.A–B.

The motion should be denied because it does not address Count I's unfairness theory, relies on affirmative defenses not established by the SAC, repeatedly challenges allegations the SAC does not make, and seeks dismissal with prejudice despite the absence of any prior ruling identifying a pleading defect.

## II. LEGAL STANDARD

A complaint must plead facts stating a plausible claim, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), with all well-pleaded facts accepted as true and all reasonable inferences drawn in Plaintiff's favor, *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008), and pro se pleadings construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Rule 9(b) governs only claims sounding in fraud; an ICFA unfairness claim need satisfy only Rule 8. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). Dismissal on an affirmative defense is proper only where "the allegations of the complaint itself set forth everything necessary" to establish it. *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014); *see Saleh v. Merchant*, No. 14-cv-09186, Dkt. 183 at 8 (N.D. Ill. Jan. 4, 2018) (Tharp, J.). The Court may not consider factual assertions outside the pleadings, Fed. R. Civ. P. 12(d), while a plaintiff opposing dismissal may elaborate with facts consistent with the complaint. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

## III. ARGUMENT

### A. Count I Survives: The Motion Never Addresses the Unfairness Theory.

Count I pleads "unfair and deceptive acts and practices" (SAC ¶ 49), yet Defendants attack it exclusively as a deception claim—particularity, reliance, deceptive act. (Dkt. 37 at 8–11.) Because Defendants do not challenge the independently pleaded unfairness theory, the motion supplies no basis to dismiss Count I in its entirety. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir.

2021) (movant bears the burden of establishing the insufficiency of the complaint). Unfairness is an independent basis of ICFA liability, distinct from deception: it requires no misrepresentation and no reliance, and it is subject to ordinary notice pleading. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417–18 (2002); *Windy City*, 536 F.3d at 670.

The theory is, in any event, adequately pleaded under the *Robinson* considerations. First, public policy: the Student Loan Servicing Rights Act imposes affirmative duties on licensees—including production of a written payment history within 21 days of request, 110 ILCS 992/5-25, and payoff statements, 110 ILCS 992/5-55—and authorizes enforcement of violations of those Article 5 duties "as an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act." 110 ILCS 992/25-5. Conduct the legislature has classified as an unlawful practice under the very statute Count I invokes at least plausibly satisfies this factor—as a matter of statutory text rather than inference. The Act's applicability is pleaded, not assumed: Aidvantage is a licensed Illinois student-loan servicer (License No. SLS 0000045) subject to IDFPR oversight, a fact Defendants' motion acknowledges. (SAC ¶ 19; Dkt. 37 at 7.) Defendants' only engagement with the license is to deny that it works "a waiver of the federal defenses" (Dkt. 37 at 7)—but the SAC invokes it as a source of statutory duty and public policy, not waiver—and the motion nowhere mentions the Act itself. The SAC pleads the offending conduct: refusal to provide amortization schedules, methodologies, or historical payoff data; a twelve-month retention practice that defeats verification of a multi-year portfolio; a 793-page production, approximately 508 pages of it not machine-readable; materially inconsistent responses to at least seven written inquiries; and repeated identification of the servicer as a nonexistent entity bearing another company's NMLS license. (SAC ¶¶ 9–10, 22–24, 39–41, 47(a).) Second, oppressiveness: Defendants are the sole borrower-facing source of the account data. (SAC ¶ 58.) Third, substantial consumer injury: approximately 932 capitalization entries totaling approximately $22,767, and $12,830.10 in payments allocated against a balance alleged to be inflated. (SAC ¶¶ 33, 52.)

Defendants' only response to the capitalization allegations—that capitalization "is routine" (Dkt. 37 at 10)—ignores the governing regulatory framework. Effective July 1, 2023, the

Department eliminated interest capitalization in all circumstances not required by statute, expressly finding that it unjustifiably inflates borrower balances, 87 Fed. Reg. 65,904 (Nov. 1, 2022); and for entries predating that rule, capitalization was permissible only upon regulatorily enumerated triggering events, 34 C.F.R. § 685.202(b) (2022)—events Aidvantage has never identified for any entry. (SAC ¶ 34.) The dates, triggering events, and asserted statutory basis of the approximately 932 documented entries are factual questions, and Defendants cannot obtain dismissal by labeling capitalization "routine" without establishing, from the pleadings, that the challenged entries were authorized. *Tamayo*, 526 F.3d at 1081.

**B. Immunity and Preemption Are Not Established on the Face of the SAC—and *Witz* Does Not Support Dismissal.**

These defenses support dismissal only if the SAC itself establishes them. *Chi. Bldg. Design*, 770 F.3d at 613–14. Plaintiff does not contend that removal waived them (*cf.* Dkt. 37 at 7); the point is that neither is established on the face of the SAC, where each must be found at this stage. *Yearsley* immunity protects a contractor only for conduct the government authorized and directed; it is unavailable where the contractor exceeds its authority or violates the law. *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20–21 (1940); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166–68 (2016). The SAC challenges representations and practices Defendants identify no federal directive requiring: the F166 letter's written commitment to advance notice of any interest-rate change, followed by no notice (SAC ¶¶ 25–27); the identification of the nonexistent "Aidvantage Solutions, LLC (NMLS# 212430)" in at least fifteen borrower-facing documents (SAC ¶¶ 9–10); a payment unapplied after fifteen business days (SAC ¶ 28); and the mailing of an unredacted Social Security number in an insecure envelope (SAC ¶ 42). Immunity for government-directed conduct does not reach conduct the government never directed—and nothing on the face of the SAC supplies the authorization and direction that *Yearsley* requires before immunity attaches to any of it.

Preemption fails at the threshold: Defendants never identify what provision of the HEA preempts anything, citing the statute only as "20 U.S.C. § 1070 et seq." (Dkt. 37 at 6–7.) The

HEA's express preemption provision, 20 U.S.C. § 1098g, reaches only state-law "disclosure requirements"—omission-based claims, not affirmative misrepresentations. *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 648–50 (7th Cir. 2019). The SAC alleges affirmative misrepresentations and affirmative operational failures—unauthorized capitalization, misapplied payments, inaccurate recordkeeping—not withheld disclosures; they impose no disclosure requirement on anyone, and Defendants develop no conflict- or field-preemption theory.

*Witz*—Defendants' principal authority—does not bear the description Defendants give it as "dismissing with prejudice breach-of-note, negligent-misrepresentation, and related claims." (Dkt. 37 at 7, citing *Witz v. Great Lakes Educ. Loan Servs., Inc.*, 752 F. Supp. 3d 980, 988–92 (N.D. Ill. 2024).) The counts *Witz* dismissed with prejudice were two contract counts, on third-party-beneficiary and assignor-immunity grounds—not derivative *Yearsley* immunity, which the court described but did not adopt. In a section captioned "These Claims Are Not Preempted," the court held the borrower's ICFA, negligent-misrepresentation, and fraud claims not preempted; it dismissed them without prejudice solely for damages allegations the plaintiff did not defend; and on repleading, the ICFA and fraud claims survived. *Witz*, No. 19-cv-06715, 2025 WL 1744782 (N.D. Ill. June 24, 2025) (cited by Defendants, Dkt. 37 at 15). *Witz* thus supports, rather than defeats, the SAC's quantified consumer-fraud allegations. *Infra* § III.C.

Defendants' recasting of the F166 claim as an "omission" answers an allegation the SAC does not make. The letter made two affirmative representations: that the rate was 0%, and that Aidvantage would notify Plaintiff in advance of any change. (SAC ¶ 25.) A written commitment made and not performed is actionable as an affirmative representation; it does not become an "omission" because the breach took the form of silence. The theory imposes no new state disclosure requirement—it seeks to hold Aidvantage to an affirmative, borrower-specific commitment Aidvantage itself chose to make, one that also represented Aidvantage's then-existing servicing procedure for Plaintiff's account (SAC ¶¶ 25, 27); and the same conduct independently supports the unfairness theory, which requires no promissory fraud. And the motion's alternative narrative—that the SAVE forbearance period "ended" in August 2025 and that the resumption of

interest "was announced publicly" and flowed from federal policy (Dkt. 37 at 3, 9 & n.4)—contradicts the SAC, which alleges that interest resumed accruing during the forbearance period (SAC ¶ 45), and rests on factual assertions outside the pleadings that cannot support Rule 12(b)(6) dismissal. Fed. R. Civ. P. 12(d).[2]

**C. Count I's Deception Theory Is Pleaded with Particularity and with Concrete Damages.**

The who, what, when, where, and how are pleaded. Aidvantage represented in letter F166, on December 12, 2024, that the rate was 0% and that advance notice would precede any change; by August 2025 interest had resumed accruing, without the promised notice. (SAC ¶¶ 25–27.) Aidvantage identified Plaintiff's servicer as a nonexistent entity bearing a legacy Navient identifier in at least fifteen documents, each identified by production page number. (SAC ¶ 9.) These are the particulars Rule 9(b) requires. And Defendants' recurring "no reliance" refrain (Dkt. 37 at 9–11) imports an element the statute does not contain: "plaintiff's reliance is not an element of statutory consumer fraud." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996).

Defendants minimize the entity misidentification as "an inaccurate trade-name field." (Dkt. 37 at 9.) It is categorically different: "Aidvantage Solutions, LLC" has never existed, and NMLS #212430 belongs to a different company entirely—Navient Solutions, LLC. (SAC ¶ 10.) The field designated "Your loan servicer" thus identified a nonexistent entity holding another company's license, at least fifteen times—permitting the inference of a systemic recordkeeping failure corroborating the SAC's other accuracy allegations. Their answer—that Plaintiff "always knew his servicer as 'Aidvantage'" (Dkt. 37 at 9)—misses what the representation is for: a servicer's legal name and NMLS number are how a borrower verifies licensure, directs disputes, and invokes Illinois' license-conditioned protections. (SAC ¶ 13.) That confusion is documented, not hypothetical: the federal complaint system routed Plaintiff's complaints to three different Maximus entity names. (SAC ¶ 11.)

---

[2]The same is true of Defendants' reliance on the Eighth Circuit's SAVE litigation. (Dkt. 37 at 4 n.2.) Whether a later federal policy change excused Aidvantage's specific written notification commitment is, at most, a question of fact.

The portal-display and regulator-statement allegations require no different result. The SAC pleads them as part of the same pattern of account-data inaccuracy—the portal simultaneously reporting "No Payment Due" and mounting interest (SAC ¶¶ 22–23), and a representation to a regulator that "three independent reviews found no errors" against a production recording hundreds of capitalization entries (SAC ¶¶ 33–34, 37)—corroborating the pleaded deception and independently supporting the unfairness theory, which requires no consumer-directed misrepresentation. *Windy City*, 536 F.3d at 670.[3] *De Bouse* requires only that the plaintiff have been "in some manner, deceived," *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 554 (2009); the SAC pleads that as to the F166 letter and the servicer-identity field. Nor is paragraph 49(e)'s system-accuracy allegation an unparticularized conclusion (Dkt. 37 at 10): it is substantiated by the same dated, quantified, page-cited capitalization entries and by a single production whose cover letter and enclosed ledger contradict each other. (SAC ¶¶ 33–34.) Defendants cannot defeat Count I by isolating each allegation from the pattern it evidences. *Marcure*, 992 F.3d at 631.

Defendants' damages attack isolates one paragraph's conditional phrasing (SAC ¶ 32) and ignores the unconditional allegations around it. The SAC pleads approximately 932 capitalization entries totaling approximately $22,767, documented in NSLDS records and Defendants' own April 3, 2026 production—whose cover letter represented that interest had "capitalized only once" while the enclosed ledger recorded approximately 883 capitalization entries. (SAC ¶¶ 33–34.) The capitalization cannot have been both singular and routine. Paragraph 32 pleads the mechanism by which misallocation flows from the capitalization injury; it is not the injury allegation itself. The pleaded injury is not the mere existence of ledger entries: capitalization converted accrued interest into principal, interest then accrued on the increased principal, and Plaintiff's payments were applied against that inflated balance—increasing both the serviced balance and the amount required to reduce it. (SAC ¶¶ 32–35, 52.) *Tamayo*, 526 F.3d at 1081. The identity-protection costs

[3]Defendants' authority for the "unprompted assumptions" point, *Dudley v. G6 Hospitality Property LLC*, 2020 IL App (1st) 182570-U, is a nonprecedential order entered before January 1, 2021, and may not be cited under Illinois Supreme Court Rule 23(e)(1).

Defendants group with "self-help" expenses (Dkt. 37 at 11) are addressed with Count IV. *Infra* § III.E.

Defendants' "voluntary payment" argument (Dkt. 37 at 10) invokes an affirmative defense subject to recognized exceptions for payment under protest or compulsion, *Getto v. City of Chicago*, 86 Ill. 2d 39, 48–49 (1981)—and the SAC pleads that every payment was made "voluntarily, in good faith, and under protest" and "should not be construed as acceptance of Aidvantage's disputed servicing, balances, [or] interest calculations." (SAC ¶¶ 29–30.) The complaint thus does not establish the defense; it pleads facts invoking recognized exceptions that require factual development. *Chi. Bldg. Design*, 770 F.3d at 613–14. Defendants' causation variant —that voluntary payments cannot have been "the result of any alleged deceptive act" (Dkt. 37 at 10–11)—misdescribes the pleaded injury, which is not the making of the payments but their allocation against a balance inflated by unauthorized capitalization (SAC ¶¶ 32, 52): harm inflicted by the accounting regardless of why Plaintiff paid, on payments themselves calibrated to the interest Defendants' communications showed accruing. (SAC ¶ 30.)[4]

**D. The Economic Loss Doctrine Is Not Established by the SAC, Which Pleads No Contract Between These Parties.**

The premise of Defendants' *Moorman* argument is refuted by their own brief. The doctrine "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations" because contract law supplies the remedy. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012). But Defendants tell the Court that "[t]he MPNs are agreements between Plaintiff and the Department of Education." (Dkt. 37 at 3.) On Defendants' own account there is no contract between Plaintiff and either Defendant. That denial undermines Defendants' attempt to

[4]To the extent Defendants' damages arguments borrow Article III language—*Petta*'s "self-inflicted" harm "not fairly traceable" to the defendant (Dkt. 37 at 14)—they prove too much: in a removed action, lack of Article III injury requires remand under 28 U.S.C. § 1447(c), not dismissal. *Collier v. SP Plus Corp.*, 889 F.3d 894, 896–97 (7th Cir. 2018) (per curiam). Having removed, Defendants cannot convert a supposed absence of injury into a merits judgment. Defendants' own description of *Remijas* and *Lewert* as "Article III standing decisions" (Dkt. 37 at 14) makes the point for them.

characterize the alleged duties as merely contractual—the very language they quote from *Catalan*, that the loan "contract itself cannot give rise to an extra-contractual duty" (Dkt. 37 at 11), presupposes a contract between the parties whose performance is at issue—and, in any event, the SAC pleads duty sources and exceptions independent of the MPN. At minimum, the defense is not established on the face of the SAC. *Chi. Bldg. Design*, 770 F.3d at 613–14.[5]

Independent duty sources are pleaded in any event. As to Count II, Illinois recognizes duties arising from a voluntary undertaking, measured by its scope, *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32 (1992), and Count II is confined to the borrower-facing functions Defendants actually undertook—the portal, payment processing, account communications, dispute responses (SAC ¶¶ 55–57)—and Illinois statutory servicing requirements, applicable to Aidvantage as a licensed servicer (SAC ¶ 19), reinforce the existence and scope of those borrower-facing duties independently of the MPN. 110 ILCS 992/5-25; 992/5-55. As to Count III, *Moorman* itself excepts negligent misrepresentation by a defendant in the business of supplying information for the guidance of others, *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 88–89 (1982); *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 334–36 (2006)—an exception this Court has recognized, *Saleh*, Dkt. 183 at 22 n.8. Count III's account-information communications —balance, rate, status, payment application—at least plausibly implicate that function; its applicability is fact-dependent and not resolvable on the pleadings. Count III's reliance element is likewise pleaded: Plaintiff made 73 voluntary payments to reduce the interest Defendants' communications showed accruing, those payments were allocated against the balances the communications represented, and the SAC pleads that reliance in terms. (SAC ¶¶ 29–32, 58.) That is the reliance a negligent-misrepresentation claim requires. *Fox Assocs., Inc. v. Robert Half Int'l, Inc.*, 334 Ill. App. 3d 90, 94 (1st Dist. 2002). Defendants' further reliance on *Witz* for the absence of a "special or fiduciary relationship" (Dkt. 37 at 12–13) addresses a duty theory Plaintiff does not advance: the *Witz* plaintiff premised duty on his claimed third-party-beneficiary status, and the

[5] The out-of-state decisions Defendants collect (Dkt. 37 at 11 n.5) apply other States' economic-loss doctrines and address none of the Illinois statutory servicing duties pleaded here.

court held only that no general or fiduciary duty arises from the servicer-borrower relationship as such—without considering a voluntary undertaking, state statutory duties, or *Moorman*'s information-supplier exception, the three sources pleaded here—and it dismissed that claim without prejudice.

**E. Count IV Pleads a Recognized Duty, a Negligent Mailing, and Reasonable Mitigation.**

Defendants' threshold contention—that "no cognizable duty exists" (Dkt. 37 at 13)—answers a different claim. Their authority, *Community Bank of Trenton*, concerned a data-security duty to prevent criminal intrusions by third-party hackers. Count IV alleges that Aidvantage itself mailed Plaintiff's full, unredacted Social Security number in an unsecured envelope. (SAC ¶¶ 42, 68.) The duty implicated is the ordinary obligation of reasonable care in activities one actually performs—the borrower mailings Aidvantage conducts—recognized generally and through the voluntary-undertaking doctrine. *Frye*, 153 Ill. 2d at 32; *supra* § III.D. Illinois public policy likewise reflects the sensitivity of Social Security numbers transmitted by mail. *See* 815 ILCS 505/2RR (restricting the printing of Social Security numbers on mailed materials).

On injury, *Petta v. Christie Business Holdings Co.*, 2025 IL 130337, rested on speculation that intruders might have viewed information, and *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, likewise involved a third-party criminal intrusion and a speculative risk of future misuse. Count IV rests on neither: Aidvantage itself placed Plaintiff's full, unredacted Social Security number into the mail without adequate protection, and the causal nexus is pleaded in terms—"[a]s a direct result of this exposure," Plaintiff incurred quantified identity-protection costs "directly attributable to Defendants' negligent handling of his personal information." (SAC ¶¶ 42–43, 68–71); *see Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693–94 (7th Cir. 2015) (recognizing mitigation costs as concrete injury). Defendants' rejoinder that *Remijas* and *Lewert* are "Article III standing decisions" (Dkt. 37 at 14) sharpens the point made in note 4, *supra*: a removing defendant's standing objection leads to remand, not judgment. Defendants' postal-transit alternative is a competing inference, and whether the mailing created a risk making the pleaded mitigation reasonable cannot be resolved against Plaintiff on the pleadings. *Tamayo*, 526 F.3d at 1081.

**F. The Claims Against MFSI Rest on Direct-Participation and Direct Manager Liability, Not Veil-Piercing.**

Defendants' veil-piercing argument answers a theory the SAC does not plead. Illinois supplies two routes to MFSI's liability, neither of which requires disregarding the corporate form. First, direct-participant liability: a parent is liable for its own conduct when it specifically directs or participates in the activity causing harm—a theory the Illinois Supreme Court has expressly distinguished from veil-piercing. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 290 (2007). The SAC pleads MFSI's participation through source-corroborated facts: MFSI is the sole member of Maximus Education, LLC—as this Court has itself noted, *see* Order, *Lipin v. Aidvantage*, No. 1:25-cv-11065, Dkt. 44 at 1 (N.D. Ill. Oct. 14, 2025) ("Maximus Education's only member is Maximus Federal"); the entities share overlapping management of the servicing operation; Maximus's public securities filings describe Aidvantage as "Maximus's servicing division," "integrated into our U.S. Federal Services Segment" (Dkt. 4 at 27–30, PageID ##830–33); and the CFPB routed Plaintiff's complaints to three different Maximus entity names, including MFSI. (SAC ¶¶ 7–8, 11.) Indeed, in remanding the first removed action, this Court observed that "[t]he defendant in the Illinois case is Maximus Federal—that is the defendant Lipin sued and served." Order, No. 1:25-cv-11065, Dkt. 44 at 2.[6]

Second, MFSI's formal management role supports the same inference. Maximus Education's Illinois annual reports for 2023–2025—filed under penalty of perjury—name MFSI as the sole entity holding manager authority, the 2023 report designating it expressly as "Manager" (Dkt. 4 at 23–25, PageID ##826–28)—the very Secretary of State records Defendants ask the Court to notice (Dkt. 37 at 5 n.3)—and under Illinois law manager-management is an affirmative election, not a default. 805 ILCS 180/15-1. Combined with sole-member ownership, overlapping management, Maximus's description of Aidvantage as an integrated servicing "division," and the

[6]The confusion persists in Defendants' own filings: the notice of motion states that MFSI was "incorrectly sued as Aidvantage a/k/a Maximus Federal Services, Inc."—a description matching no operative pleading; the SAC names MFSI under its own corporate name. (Dkt. 36 at 1; SAC caption & ¶ 7.)

inconsistent entity identifications, those records plausibly support MFSI's participation in or direction of the challenged operations. And manager status does not insulate an entity from liability for its own conduct. 805 ILCS 180/10-10(a-5) (superseding *Dass v. Yale*, 2013 IL App (1st) 122520).

*Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013), condemned lumping defendants with no differentiating facts; the SAC pleads MFSI-specific facts and confines MFSI's exposure to conduct the evidence ties to it. (SAC ¶ 8.) Where the corporate family's own use of a single trade name has made the entities indistinguishable to the borrower and regulators alike, which entity performed and directed which function is a fact question—whose answer lies peculiarly within Defendants' knowledge.[7]

**G. Count V Identifies a Benefit Conferred by Plaintiff, Not by the Department.**

The motion asserts that the benefit at issue is "servicing fees and compensation from the ED." (Dkt. 37 at 15.) But paragraphs 74–75 identify Plaintiff's own payments as the benefit: Aidvantage "received and processed these payments, retained servicing credit for the transactions, and allocated them against a balance Plaintiff contends was inflated by unauthorized capitalization events." (SAC ¶ 74.) Count V is thus derivative of the servicing misconduct pleaded in Counts I–III and alleges that Defendants obtained servicing-related value by receiving and processing Plaintiff's payments totaling at least $15,546.36; the precise form and amount of the retained benefit lie within Defendants' compensation and accounting records. (SAC ¶¶ 74–75.)[8] And because Defendants maintain that no contract exists between Plaintiff and either Defendant (Dkt. 37 at 3), their express-contract bar fails on its own premise: a contract with a non-party does not preclude equitable claims against strangers to it. And Count V is expressly "pled in the alternative"

[7]Defendants' request for judicial notice of Federal Student Aid and Secretary of State records (Dkt. 37 at 5 n.3) does not resolve that question—judicial notice establishes the existence and content of public records, not the truth of disputed operational facts—and the Secretary of State records Defendants invoke include the annual reports naming MFSI as manager. Fed. R. Civ. P. 12(d).

[8]The $12,830.10 figure reflects the 73 voluntary payments made during the SAVE administrative forbearance while no payment was due (SAC ¶ 29); the $15,546.36 figure reflects the total payments Aidvantage received and processed from Plaintiff as pleaded in Count V. (SAC ¶ 74.)

(SAC ¶ 73), as the Rules permit. Fed. R. Civ. P. 8(d)(2)–(3); *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 886 (7th Cir. 2022).

**H. The Declaratory and Injunctive Remedies Are Prospective and Enforce Preexisting Duties.**

The requested relief is prospective: Plaintiff has been directed to exit the SAVE plan, and every element of that transition—plan placement, payment amount, allocation, further capitalization—will be computed from account data alleged to be inaccurate, while interest accrues on the disputed balance. (SAC ¶¶ 45, 77–81.) These are remedies tied to the substantive counts, available if any underlying claim survives. (SAC ¶ 82.) That is a definite and live controversy, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), and it is not "redundant" of the damages counts, which cannot govern the prospective computation of the account. Defendants' declaratory-judgment authorities are Illinois procedural decisions, but declaratory relief here is governed by 28 U.S.C. § 2201—and the injunction standard they invoke (Dkt. 37 at 15) is likewise Illinois procedural law. Nor is the requested injunction "a discovery request": Illinois law obligated Defendants—before this litigation existed—to produce payment histories within 21 days of request as state licensees, 110 ILCS 992/5-25, and Plaintiff documented written requests that outran the statutory period before any discovery obligation attached. (SAC ¶¶ 39–41; Dkt. 33 ¶¶ 9–15.) Compelling compliance with preexisting statutory duties is conventional equitable relief. Any dispute over the ultimate equitable showing goes to the scope of available remedies, not the sufficiency of the underlying claims.

**I. Dismissal with Prejudice Would Be Unwarranted in Any Event.**

Defendants' request for prejudice rests on the premise that Plaintiff has had "multiple opportunities" to cure judicially identified defects; there has been none—no adverse ruling, no identified deficiency. Where a court has never passed on the sufficiency of any pleading, leave to amend should be granted at least once, and denying it is ordinarily an abuse of discretion. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The *Huon* litigation Defendants invoke (Dkt. 37 at 3

n.1, citing *Huon v. Breaking Media, LLC*, No. 11 C 03054, 2015 WL 14072621, at *3 (N.D. Ill. May 20, 2015)) defeats the comparison: there, this Court granted leave to file a fourth amended complaint notwithstanding multiple adjudicated dismissals, *see* Order, *Huon v. Breaking Media*, No. 11 C 3054, Dkt. 157 (N.D. Ill. Sept. 14, 2012); denied leave for a fifth only after dismissing the fourth in full; and was affirmed because the plaintiff "had ample opportunity to plead his claims." *Huon v. Denton*, 841 F.3d 733, 741–42 (7th Cir. 2016). Here, no motion to dismiss any version of the complaint has been adjudicated. Any dismissal should be count-specific and without prejudice, with leave to amend.

## IV. CONCLUSION

Because the motion repeatedly answers claims the SAC does not plead, rests on affirmative defenses not established on the face of the complaint, and leaves Count I's independently pleaded unfairness theory unaddressed, it should be denied in its entirety. In the alternative, any dismissal should be limited to specific counts and entered without prejudice, with leave to amend.

Dated: July 15, 2026

Respectfully submitted,

/s/ Brandon M. Lipin
Brandon M. Lipin, Pro Se
432 Dogwood Terrace
Buffalo Grove, Illinois 60089
(847) 337-2211
brandon.lipin@outlook.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Scott J. Helfand
Michael J. Hopkins
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
Scott.Helfand@huschblackwell.com
Michael.Hopkins@huschblackwell.com

Colleen Fox (*pro hac vice*)
HUSCH BLACKWELL LLP
1801 Pennsylvania Avenue, NW, Suite 1000
Washington, DC 20006
Colleen.Fox@huschblackwell.com

*Counsel for Defendants*

/s/ Brandon M. Lipin
Brandon M. Lipin, Pro Se