**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRANDON M. LIPIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:26-cv-00644 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| MAXIMUS EDUCATION, LLC d/b/a AIDVANTAGE, and MAXIMUS FEDERAL SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

# DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED VERIFIED COMPLAINT


Scott J. Helfand (#6283064)
Michael J. Hopkins (#6336058)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
Phone: (312) 655-1500
Facsimile: (312) 655-1501
Email: scott.helfand@huschblackwell.com
michael.hopkins@huschblackwell.com

Colleen Fox (*pro hac vice* admission)
HUSCH BLACKWELL LLP
1801 Pennsylvania Avenue, NW, Suite 1000
Washington, DC 20006
Phone: (202) 378-5795
Facsimile: (202) 378-2319
Email: Colleen.Fox@huschblackwell.com

***Counsel for Defendants***

## INTRODUCTION

Plaintiff's opposition confirms that this case is about one thing: the servicing of federally owned student loans under a contract with the Department of Education. The Second Amended Complaint ("SAC") alleges that Aidvantage miscalculated interest, capitalized interest improperly, misapplied payments, maintained inaccurate records, and mishandled borrower communications while servicing Plaintiff's federal loans. (SAC ¶¶ 22-41.) Every claim arises from that same alleged servicing conduct. That matters because federal law governs the conduct Plaintiff challenges, because Plaintiff identifies no duty independent of this servicing relationship, and because his alleged injuries remain derivative of his contention that the servicing was inaccurate.

The opposition also narrows the disputes before the Court. Plaintiff does not cure the absence of any factual allegations against MFSI. He does not identify conduct that falls outside Aidvantage's federally authorized servicing role. And while he repackages his theories under different labels, he still does not plausibly allege the essential elements of any cause of action, including actual damages, causation, duty, reliance, or an unjustly retained benefit. At bottom, Plaintiff's response underscores that his claims fail both as a matter of law and on their own pleaded allegations, requiring dismissal of the SAC in its entirety.

## ARGUMENT

### A. The Claims Against MFSI Fail Because the SAC Alleges No Conduct That MFSI Performed or Directed.

Every claim against MFSI fails at the threshold because the SAC never alleges that MFSI performed, directed, or participated in any of the conduct at issue. That omission is fatal. Federal pleading rules require a plaintiff to allege what each defendant did, not simply identify a corporate affiliate and speculate that discovery may uncover a basis for liability. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Liability is personal.").

The SAC contains no factual allegation that MFSI serviced Plaintiff's loans, calculated interest, capitalized balances, applied payments, maintained loan records, communicated with Plaintiff, or handled the mailing that underlies Count IV. Instead, Plaintiff alleges only that MFSI is the sole member of Aidvantage, shares overlapping management, and may be liable "to the extent the evidence shows" involvement. (SAC ¶¶ 7-8.) Those allegations describe a corporate relationship, not actionable conduct.

Plaintiff's opposition does not identify the missing conduct. Rather, it points to the same corporate-structure allegations and repackages them as theories of "direct participant" or "manager" liability. But neither doctrine eliminates the requirement that Plaintiff plead facts showing MFSI's own involvement in the challenged acts. Direct-participant liability arises only when a parent corporation specifically directs, authorizes, or participates in the conduct giving rise to the injury—ownership and oversight are not enough. *See Forsythe v. Clark USA*, *Inc.*, 224 Ill. 2d 274, 290 (2007). Likewise, the Illinois LLC Act does not impose liability on a manager merely because of that status. Plaintiff must still allege that the manager personally participated in the wrongful conduct. The SAC contains no such allegation.

Nor do Plaintiff's additional references cure this defect. That MFSI is Aidvantage's sole member, that Maximus describes Aidvantage as part of an integrated servicing business, and that MFSI appears as "Manager" on corporate filings establish only ownership, affiliation, and formal management status. None of those facts plausibly suggests that MFSI itself calculated Plaintiff's interest, applied his payments, or directed any of the specific servicing decisions challenged in the SAC. The distinction matters because corporate affiliation alone does not create liability. If it did, the separate existence of limited-liability entities would have little meaning.

At bottom, Plaintiff seeks to proceed against MFSI not because of anything MFSI allegedly did, but because of its relationship to the entity that allegedly interacted with him. That is not enough. Whether framed as direct-participant liability, manager liability, or some variant of veil-piercing, Plaintiff's theory fails for the same reason: the SAC alleges no conduct by MFSI itself.

### B. All of Plaintiff's Claims Arise From Federal Loan Servicing and Are Barred by Derivative Sovereign Immunity and Preempted by the Higher Education Act.

Because every count arises from Aidvantage's servicing of federal loans under contract with the Department, two threshold doctrines apply, and both may be resolved on the pleadings. Derivative sovereign immunity protects a contractor for conduct performed within the authority the government conferred, and is unavailable only where the contractor exceeds that authority or violates the law. *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20–21 (1940); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166–68 (2016). And the Higher Education Act, 20 U.S.C. § 1070 et seq. ("HEA"), preempts state-law claims that would impose servicing or disclosure obligations beyond those the federal scheme prescribes.

Plaintiff does not dispute that these defenses may be decided now. He instead argues only that the SAC does not establish them on its face. (Opp. 4–5.) It does: the SAC alleges that Aidvantage services Department-owned loans under a federal contract (SAC ¶¶ 6, 21) and that the challenged conduct is the performance of that servicing (SAC ¶¶ 22–41). Plaintiff's list of supposedly undirected conduct—the F166 notice commitment, the servicer-identity field, a payment not reflected within fifteen business days, and the mailing (Opp. 4)—does not identify anything Aidvantage did outside its servicing role. Each is itself a servicing-performance act (a borrower communication, a recordkeeping entry, payment processing, correspondence), not conduct falling outside the federal contract altogether. Plaintiff's invocation of Yearsley's

"exceeds-authority" exception (Opp. 4) requires plausible allegations that Aidvantage acted beyond its federal authorization; disagreement with servicing outcomes is not such an allegation.

Plaintiff is correct on one narrow point: the HEA's express provision, 20 U.S.C. § 1098g, reaches state-law "disclosure requirements," and *Nelson* holds that a claim built on a servicer's own affirmative misstatement is not preempted. *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 648–50 (7th Cir. 2019). Defendants do not contend otherwise. To the extent the December 12, 2024 F166 letter made an affirmative representation—that the rate was 0% and that Aidvantage would give advance notice of any change (SAC ¶¶ 25–27)—that is an affirmative representation, not an omission recast as a disclosure claim, and *Nelson* permits Plaintiff to pursue it. But *Nelson* rescues that single statement and no more. The servicing-performance core of every count—interest calculation, capitalization, payment application, and recordkeeping—remains preempted, and Plaintiff offers no conflict- or field-preemption answer. And, as Section C shows, the F166 representation independently fails on the elements of every claim in which it appears.

*Witz* does not help Plaintiff. For the avoidance of doubt, the court there held that the borrower's consumer-fraud and negligent-misrepresentation claims were not preempted, but it dismissed those claims because the plaintiff failed to plead adequate damages. *Witz v. Great Lakes Educ. Loan Servs., Inc.*, 752 F. Supp. 3d 980, 990–92 (N.D. Ill. 2024). *Witz* applied the same § 1098g line drawn above—disclosure and omission claims are preempted, affirmative misrepresentations are not, *see Nelson*, 928 F.3d at 649—and Defendants invoke preemption only as to the servicing-performance core, never as to the F166 representation. Defendants rely on *Witz* not for a preemption holding but for its separate conclusion that the borrower, like Plaintiff, pleaded no cognizable damages.

Further, Plaintiff's Notice of Supplemental Authority (Dkt. 40, filed Aug. 3, 2026), attaching *GEO Group, Inc. v. Menocal*, No. 24-758, 607 U.S. ___ (Feb. 25, 2026), does not alter the analysis. *GEO Group* held only that an order *denying* a contractor's *Yearsley* defense is not immediately appealable under the collateral-order doctrine, because *Yearsley* supplies a defense to liability on the merits rather than an immunity from suit. That is a rule about appellate jurisdiction—when a defendant may appeal a *denial* of the defense—not about whether the defense may be raised or established on a motion to dismiss. *GEO Group* leaves the substantive *Yearsley* standard untouched: immunity protects a contractor for conduct the government authorized and directed, and is unavailable only where the contractor exceeds that authority or the authority was not validly conferred. If anything, *GEO Group* confirms Defendants' framing—it holds that *Yearsley* is a merits defense that may be resolved on this motion.[1]

Preemption bars all Plaintiff's claims. But as discussed below, those claims fail regardless.

### C. Even If Plaintiff's Claims Cleared Those Threshold Bars, Count I (ICFA) Fails on Its Elements.

The ICFA reaches two distinct kinds of conduct—deceptive practices and unfair practices—and Plaintiff invokes both. (SAC ¶ 49; Opp. 2–3.) A deception claim requires: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the deception's occurrence in a course of trade or commerce; (4) actual damage to the plaintiff; and (5) proximate causation—that the damage occurred "as a result of" the deception.

[1] The posture that produced the appeal in *GEO Group* is also absent here: there, the defense had been *denied* on a summary-judgment record that left disputed whether the Government directed the challenged conduct, whereas the SAC itself pleads that the challenged conduct *was* Aidvantage's performance of its federal servicing contract (SAC ¶¶ 6, 21–41), which—absent any plausible allegation that Aidvantage exceeded its authorization—establishes the defense on the face of the pleading. And *GEO Group* addresses only *Yearsley*; it says nothing about Higher Education Act preemption, which independently bars the servicing-performance core of every count.

*De Bouse v. Bayer AG*, 235 Ill. 2d 544, 550 (2009); *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 199 (2005). An unfairness claim requires no misrepresentation or reliance, but the plaintiff must still plead actual, pecuniary damage proximately caused by a practice that is "unfair" under the standards Illinois has adopted. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417–18 (2002); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014). Count I fails under either theory, for the independent reasons that follow.

**No actual, pecuniary damage.** Every ICFA claim—deceptive or unfair—requires "actual damage," which Illinois courts measure as actual, out-of-pocket pecuniary loss. *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010); *Camasta*, 761 F.3d at 739; *Avery*, 216 Ill. 2d at 199. Plaintiff pleads none. The approximately $22,767 in "unexplained" capitalization (SAC ¶ 52(a)) is, even accepting Plaintiff's allegations as true, not unauthorized, nor unexplained—interest is determined by federal law.[2] And capitalizing already-accrued interest converts one component of an existing obligation into another; it is not a new out-of-pocket loss, and the SAC alleges no facts showing that any specific entry violated any specific rule. The $12,830.10 in "misallocated" payments rests on Plaintiff's own conditional premise— "[i]f the underlying interest calculations were inaccurate, then the allocation . . . was correspondingly inaccurate" (SAC ¶ 32)—and recasting that conditional as a "mechanism" (Opp. 7) does not supply the missing fact that the calculations were in fact wrong. The remaining outlays—identity-monitoring subscriptions and

[2] To be clear, Aidvantage does not, nor could it, unilaterally determine how and when interest accrues; it is a matter of federal law. *See* 20 U.S.C.A. § 1087e(b) (setting interest rates for Direct Loan program and identifying capitalization events); 34 C.F.R. § 685.202(a)-(b) (explaining interest rates applicable to Direct Loans and events of capitalization). Aidvantage has responded to several repetitive demands from Plaintiff and provided him with detailed amortizations and explanations about interest on his loans—far beyond what is required.

dispute costs (SAC ¶ 52(c)–(d))—are self-help expenditures Plaintiff chose to incur. Because the damages element is absent, Count I fails as a whole, and the deception-versus-unfairness debate never matters.

**The damages defect is a merits question, not a jurisdictional one.** Plaintiff's most-repeated rejoinder is that Defendants' damages arguments are really an Article III standing objection, which in a removed case would require remand under 28 U.S.C. § 1447(c). (Opp. 7–8 & n.4, 10 (citing *Collier v. SP Plus Corp.*, 889 F.3d 894 (7th Cir. 2018)).) That misreads the motion. Defendants do not contend that Plaintiff lacks Article III standing—they contend that he fails to plead the actual-damage element of his statutory and tort claims under Rule 12(b)(6). Those are different questions—a plaintiff may clear the low threshold of Article III injury and still fail to plead the pecuniary loss his causes of action require. Assuming Plaintiff has standing, his claims still fail on the merits, and *Collier*—which governs only genuine defects in constitutional standing—is inapposite. This Court has already denied remand (Dkt. 24) and has jurisdiction to dismiss on the merits.

**Proximate causation, not reliance.** Plaintiff argues that Defendants demand "reliance," which the Act does not require. (Opp. 6.) Defendants agree that reliance is not an element—but proximate causation is, and it is not satisfied here. A consumer-fraud plaintiff need not show reliance, but he must show that the challenged practice proximately caused his damages: that he was "in some manner, deceived," and that the deception led to his loss. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996); *De Bouse*, 235 Ill. 2d at 554–55; *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002). Plaintiff never alleges that any act led him to pay more, pay sooner, or do anything he would not otherwise have done; to the contrary, he pleads that he paid "while no payment was required." (SAC ¶ 29.)

Plaintiff's invocation of *Getto v. City of Chicago,* 86 Ill. 2d 39, 48–49 (1981) (Opp. 9) confuses an affirmative defense with an element of his claim. Defendants do not rely on the voluntary-payment doctrine. Rather, Plaintiff's own allegations defeat proximate causation. He alleges that he knew no payment was due, disputed Aidvantage's calculations, and nevertheless elected to make payments. (SAC ¶ 29.) Those facts do not show that any alleged misrepresentation or unfair practice caused his loss; they suggest the opposite. Whether those payments could later be characterized as involuntary under *Getto* therefore has no bearing on the dispositive issue here: Plaintiff has not plausibly alleged that any challenged conduct caused him to part with his money.

**The deception theory fails under Rule 9(b), and relabeling it "unfairness" does not avoid that standard.** To the extent Count I sounds in deception, it is a fraud claim subject to Rule 9(b)'s requirement to plead the "who, what, when, where, and how" of the alleged deception with the same particularity and specificity required under common-law fraud. *Camasta*, 761 F.3d at 737; *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011); *see also Connick*, 174 Ill. 2d at 501–02 (ICFA claims sounding in fraud must be pleaded with the same particularity as common-law fraud); *MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 793 (N.D. Ill. 2010) (dismissing CFA claim under Rule 9(b) where plaintiff failed to identify which statements were false, when they were made, or who made them). Plaintiff's opposition all but abandons the deception theory, defending it only glancingly while pivoting to unfairness precisely to escape Rule 9(b). The pivot fails twice over: the fraud-based portions of Count I remain subject to Rule 9(b) regardless of the "unfairness" label, and, as the motion showed and Plaintiff does not meaningfully dispute, none of the five identified acts is an actionable misrepresentation—the portal accurately showed accruing interest with no payment then due; the F166 letter was accurate when made, and the alleged absence of a later notice is not a false statement; the trade-name field

caused no loss because Plaintiff always dealt with "Aidvantage"; the statement to a regulator was not directed at Plaintiff; and the "inaccurate system" allegation is a conclusion, not a particularized misstatement. (SAC ¶ 49.)

**The unfairness theory fails on its own elements.** Illinois evaluates unfairness under three considerations: whether the conduct (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers. *Robinson*, 201 Ill. 2d at 417–18.

Plaintiff never meaningfully grapples with these requirements. As to public policy, he now points to specific Servicing Rights Act provisions—the 21-day payment-history requirement, 110 ILCS 992/5-25, and the payoff-statement requirement, 110 ILCS 992/5-55 (Opp. 3)—but citing the statute is not the same as pleading its violation. That Act makes only a violation of its Article 5 duties actionable as an ICFA practice, 110 ILCS 992/25-5, and the SAC pleads no such violation with supporting facts—no payment-history request refused within the statutory period, no payoff statement withheld. A licensing statute does not transform every servicing complaint into an unfair practice, and identifying the provisions Plaintiff believes apply does not supply the missing allegation that Aidvantage violated them. As to oppressiveness, alleged imperfections in a servicer's recordkeeping and communications are not immoral, unethical, oppressive, or unscrupulous conduct. And as to substantial injury, the factor requires real, non-speculative loss that a consumer could not reasonably have avoided—the opposite of voluntary payments made while nothing was due and monitoring services Plaintiff elected to buy. The unfairness theory thus fails under each factor, and independently for want of the actual damage and proximate causation that every ICFA claim requires. Count I should be dismissed with prejudice.

### D. Counts II and III (Servicing-Based Tort Claims) Fail Because a Loan Servicer Owes Its Borrower No Duty Independent of the Servicing Relationship, and the Economic-Loss Doctrine Independently Bars Them.

Counts II and III fail at the outset because Illinois law does not recognize the duty Plaintiff seeks to impose. To state a tort claim, Plaintiff must identify a duty that exists independently of any contractual relationship. But Illinois courts have repeatedly held that a loan servicer owes no such duty to a borrower. A servicer's responsibilities arise from contractual and regulatory obligations governing the servicing relationship, not from any freestanding common-law duty of care. As a result, borrowers seeking redress for allegedly deficient servicing must look to contract-based remedies, not tort.

That principle independently triggers the *Moorman* economic-loss doctrine. Plaintiff seeks only economic damages. (SAC ¶¶ 59, 65.) Under Illinois law, purely economic losses are not recoverable in tort where the alleged duties arise from contractual obligations rather than an independent duty imposed by law. In *Wigod v. Wells Fargo Bank, N.A.*, the Seventh Circuit held that a loan servicer's duties "emerged solely out of its contractual obligations" and that, absent a fiduciary relationship, the servicer owed no independent tort duty to the borrower. 673 F.3d 547, 568 (7th Cir. 2012). The same reasoning appears in *Catalan v. GMAC Mortgage Corp.*, where the court explained that borrowers were "foreclosed from recovering on their negligence claims under the economic loss doctrine" because the loan contract could not create an extra-contractual duty. 629 F.3d 676, 692-93 (7th Cir. 2011). More recently, *Witz* likewise recognized that no special or fiduciary relationship exists between a federal loan servicer and its borrower. 752 F. Supp. 3d at 992. Because Counts II and III seek only economic losses and rely on duties Illinois law does not recognize, they should be dismissed.

Plaintiff responds that because Defendants dispute the existence of a contract between Plaintiff and Aidvantage, the economic-loss doctrine cannot apply. That gets the doctrine backwards: *Moorman* does not turn on contractual privity between the plaintiff and the defendant, but on whether the loss is purely economic and the duty asserted arises from a contractual relationship rather than an independent tort duty. The absence of a direct contract between these parties does not manufacture a tort duty that Illinois law does not otherwise recognize.

Plaintiff's reading of *Catalan* is equally misplaced. The court's discussion of the loan contract addressed the source of the servicer's role, not whether the servicer signed the borrower's note. Nor is there any inconsistency between Defendants' position that the master promissory notes are agreements between Plaintiff and the Department and the observation that a servicer's obligations arise from contract. Aidvantage's obligations stem from its servicing relationship with the Department and the federal program under which it operates. Those obligations do not create a separate common-law duty running to borrowers. That distinction is why courts consistently treat servicing disputes as matters of contract and regulation rather than tort. Plaintiff's focus on the phrase "extra-contractual duty" simply conflates contractual privity with the existence of an independent legal duty. The doctrine requires the latter, not the former.

Plaintiff's remaining theories fare no better. A voluntary undertaking creates a duty only to the extent of the undertaking itself; it does not impose a broad obligation to service a federal loan free from error. *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32 (1992). The Illinois Servicing Rights Act establishes a regulatory enforcement framework, not a common-law duty of care. And *Moorman*'s limited exception for businesses that supply information for the guidance of others does not apply to a loan servicer whose communications are merely incidental to servicing

activities rather than the product being sold. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 88-89 (1982); *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 334-36 (2006).

**E. Count III (Negligent Misrepresentation) Independently Fails on Its Elements.**

Even apart from the economic-loss doctrine, Count III fails on its elements. Negligent misrepresentation requires: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining its truth; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in reliance on the statement; (5) resulting damage; and—critically—that the defendant owed the plaintiff a duty to communicate accurate information. *Fox Assocs., Inc. v. Robert Half Int'l, Inc.*, 334 Ill. App. 3d 90, 94 (1st Dist. 2002). The duty element defeats the claim. As shown above, a loan servicer owes its borrower no special or fiduciary duty, and Illinois courts "have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one." *Wigod*, 673 F.3d at 571; *Witz*, 752 F. Supp. 3d at 992. Plaintiff's asserted duty sources—a voluntary undertaking, the Servicing Rights Act, and *Moorman*'s information-supplier exception—fail for the reasons given in Section D. The claim independently lacks an actionable misrepresentation and any well-pleaded reliance, for the reasons stated as to Count I. And because the missing servicer-borrower duty is a defect of law that no repleading can cure—the *Witz* court itself doubted such a relationship "could be successfully alleged" even as it granted leave to amend, 752 F. Supp. 3d at 992—Count III should be dismissed with prejudice.

**F. Count IV (Negligent Handling of Personal Information) Fails for Lack of Any Cognizable Duty and Any Actionable Damages.**

Count IV alleges that a single March 2025 mailing containing Plaintiff's Social Security number arrived "unsealed, damaged, or otherwise insecure." (SAC ¶¶ 42, 68.) Negligence requires a duty, a breach, causation, and actual damages, and Count IV fails on duty and damages alike. Illinois recognizes no freestanding common-law duty requiring a loan servicer to safeguard

personal information transmitted by mail, and Plaintiff cites none; courts have declined to locate such a tort duty in the common law or in the statutes addressed to information security. *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 210 F. Supp. 3d 1022, 1041 (S.D. Ill. 2016). Plaintiff's reliance on 815 ILCS 505/2RR (Opp. 10) is misplaced—that provision, under which he does not sue, creates no common-law negligence duty—and the voluntary-undertaking doctrine reaches only the scope of what was undertaken. *Frye*, 153 Ill. 2d at 32. Nor do *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015), and *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016), supply the missing duty or damages: both are Article III standing decisions arising from deliberate criminal data breaches in which hackers had stolen—and in some cases already used—customer payment-card data, facts bearing no resemblance to a single piece of mail alleged to have arrived "unsealed, damaged, or otherwise insecure."

The damages defect is independent and, as Section C explains, presents a merits question rather than a standing objection. Plaintiff alleges no access, acquisition, or misuse of his information—only a risk of exposure and monitoring services he chose to purchase. (SAC ¶¶ 42–43, 71.) Costs voluntarily incurred to guard against a speculative, unrealized risk are not compensable damages. *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶ 15. And the SAC's disjunctive allegation that the envelope was "unsealed, damaged, or otherwise insecure" is equally consistent with ordinary handling in transit; it does not plausibly attribute the envelope's condition to Aidvantage rather than the postal system. *Iqbal*, 556 U.S. at 678.

### G. Count V (Unjust Enrichment) Fails Because It Is Wholly Derivative and Identifies No Benefit Unjustly Retained.

Unjust enrichment requires that the defendant "unjustly retained a benefit to the plaintiff's detriment." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989). Plaintiff now clarifies that the benefit is his own loan payments—now quantified as approximately

$15,546.36 in total payments Aidvantage "received and processed" and for which it "retained servicing credit" (Opp. 12)—not compensation Aidvantage received from the Department. That clarification, and that larger figure, does not save the claim. First, it is entirely unclear what "servicing credit," means in this instance, nor what "credit" Plaintiff believes he conveyed. Plaintiff's payments were applied to reduce his own loan balance; Aidvantage retained no benefit at Plaintiff's expense by processing payments he directed toward his own debt, whether that sum is $12,830.10 or $15,546.36. Aidvantage does not "retain" borrower payments; the Department is the lender. Receiving and processing a borrower's payment as servicer is precisely the contractual function Aidvantage was retained to perform; performing that function is not an unjustly retained benefit merely because Plaintiff disputes the resulting balance. *Witz*, 2025 WL 1744782, at *4 ("As part of its servicing responsibilities, Defendant collects loan payments, administers repayment programs on behalf of the Department . . . and agrees to comply with the federal law and the Department's regulations."). To the extent any benefit came from the Department rather than Plaintiff, a plaintiff cannot recover for a benefit conferred by a third party. *Asch v. Teller, Levit & Silvertrust, P.C.*, No. 00 C 3290, 2003 WL 22232801, at *7 (N.D. Ill. Sept. 26, 2003). Count V is also entirely derivative of Counts I through IV and fails with them, *see Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011), and the absence of a governing contract does not save it, since Defendants do not rest Count V on an express-contract bar.

**H. The Declaratory and Injunctive "Remedies" Fall With the Claims.**

Plaintiff concedes that his requests for declaratory and injunctive relief are "tied to the substantive counts" and available only "if any underlying claim survives." (SAC ¶ 82; Opp. 12.) Because Counts I through V fail, the requested remedies fail with them. Plaintiff's reliance on *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), for the proposition that a "definite and live

controversy" exists (Opp. 13) does not help him. *MedImmune* addresses when a declaratory-judgment controversy is sufficiently concrete for Article III purposes, not whether the substantive theory underlying the requested declaration states a claim. A live case-or-controversy is not disputed here. The problem is that the declaration Plaintiff seeks—whether past capitalization was authorized and past servicing was accurate—asks the Court to adjudicate historical conduct that the underlying counts already fail to state. The "prospective" relabeling does not change that analysis. Adjudicating whether past capitalization was authorized and whether past servicing was accurate is backward-looking, and the demand that Defendants "produce transaction-level servicing data in machine-readable form" (SAC ¶ 81) seeks discovery, not an injunction. Plaintiff's statutory-production argument creates no freestanding claim for equitable relief; the Servicing Rights Act supplies its own enforcement path.

## I. The Legally Barred Counts Should Be Dismissed With Prejudice.

Leave to amend should be denied if amendment is futile. *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). Plaintiff's reliance on the fact that no court has previously ruled on the sufficiency of any pleading in this action (Opp. 13–14) does not change the futility analysis: the rule that leave should be freely given does not apply where, as here, the defect is legal rather than factual and no amendment could cure it, regardless of how many prior rulings preceded the request. Several of the defects here are legal, not factual, and no additional allegation can cure them: derivative sovereign immunity and preemption for servicing performed under the federal contract; the absence of any tort duty a loan servicer owes its borrower; the unavailability, as a matter of law, of the speculative and self-inflicted losses Plaintiff pleads as damages; and the failure to allege any act by MFSI. After three complaints and fifteen pages of opposition, Plaintiff identifies no curative fact. These counts should be dismissed with prejudice.

## CONCLUSION

For these reasons and those stated in the motion, Defendants respectfully request that the Court dismiss Plaintiff's Second Amended Verified Complaint in its entirety and with prejudice, and grant such further relief as the Court deems just and proper.

Dated: August 14, 2026

**MAXIMUS FEDERAL SERVICES, INC. and MAXIMUS EDUCATION, LLC,**
Defendants

By: *<u>/s/ Michael J. Hopkins</u>*
One of Their Attorneys

Scott J. Helfand (#6283064)
Michael J. Hopkins (#6336058)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
Phone: (312) 655--1500
Facsimile: (312) 655-1501
Email: scott.helfand@huschblackwell.com
michael.hopkins@huschblackwell.com

Colleen Fox (*pro hac vice* admission)
HUSCH BLACKWELL LLP
1801 Pennsylvania Avenue, NW, Suite 1000
Washington, DC 20006
Phone: (202) 378-5795
Facsimile: (202) 378-2319
Email: Colleen.Fox@huschblackwell.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and served via First Class Mail, postage prepaid, and email upon the following:

Brandon M. Lipin
432 Dogwood Terrace
Buffalo Grove, Illinois 60089
brandon.lipin@outlook.com

*Pro se Plaintiff*

*/s/ Michael J. Hopkins*
Michael J. Hopkins